-PS-O-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GEORGE CHAVIS,

                 Plaintiff,

        -v-

P. CHAPPIUS, et al.,

                 Defendants.

_____

**DECISION AND ORDER**
06-CV-543S

## I.  BACKGROUND

This matter has a long and tortured history.  In a Memorandum and Order dated

October 24, 2006 (Docket No. 4), the Court (Hon. John T. Elfvin) denied plaintiff's

application to proceed *in forma pauperis* because he had accrued "three strikes" under 28

U.S.C. § 1915(g) and had failed to assert claims that would satisfy the "imminent danger"

exception to the three-strikes rule.[1]

By Decision and Order dated May 10, 2007 ("May 10, 2007 Order") (Docket No. 7),

the Court (Hon. Charles J. Siragusa) construed plaintiff's motion to amend his Complaint

(Docket No. 5), as a motion for reconsideration of Judge Elfvin's Memorandum and Order

_____

[1]As amended by the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C. § 1915 allows indigent prisoners to defer paying filing fees under a structured payment plan. *See* 28 U.S.C. § 1915(b). However, section 1915(g) denies this option to prisoners whose repeated legal claims are dismissed as frivolous, malicious, or not stating a claim:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil
> action or proceeding under this section if the prisoner has, on 3 or more prior
> occasions, while incarcerated or detained in any facility, brought an action or appeal
> in a court of the United States that was dismissed on the grounds that it is frivolous,
> malicious, or fails to state a claim upon which relief may be granted, unless the
> prisoner is under imminent danger of serious physical injury.

*Id*. § 1915(g).

dated October 24, 2006.  (Docket No. 4.)  The Court found no basis to reconsider Judge Elvin's denial of poor person status and the Complaint was dismissed upon plaintiff's failure to pay the filing fee.  (Docket No. 7.)  Plaintiff appealed the dismissal, and the Second Circuit issued a Mandate on September 13, 2010, vacating the May 10, 2007 Order and remanding the case to allow amendment of plaintiff's Complaint.  In so ruling, the Court of Appeals concluded that "Chavis's Complaint—had he been allowed amendment—might very well have satisfied the imminent danger exception, and we vacate and remand . . . to allow that amendment." *Chavis v. Chappius*, 618 F.3d 162, 171 (2d Cir. 2010).  This Court (Hon. H. Kenneth Schroeder, Jr.) thereafter directed plaintiff to file an Amended Complaint.  (Docket No. 15.)

Plaintiff filed an Amended Complaint on October 31, 2011.  (Docket No. 18.) Because the Amended Complaint repeated and re-alleged plaintiff's original Complaint and, in effect, incorporated by reference the original Complaint (Docket No.8, at p. 2-3; Docket No. 19, Decision and Order, at 2), plaintiff was directed to file another ("Second") Amended Complaint. (Docket No. 19.) The Court (Hon. H. Kenneth Schroeder, Jr.) stated that because "an amended complaint is not a supplement to the original Complaint, but is intended to completely replace the prior Complaint in the action. . . [and because] an amended complaint ordinarily supersedes the original and renders it of no legal effect[,]" the Amended Complaint as structured could not proceed and had to be amended.  (Docket No. 19, Decision and Order ("June 12, 2012 Order").)  The June 12, 2012 Order also noted that the Court was reserving judgment on whether plaintiff's allegations satisfied the imminent danger exception until it received the Second Amended Complaint and that plaintiff was reminded that, as stated by the Second Circuit, "[a] court may find that a

2

complaint does not satisfy the 'imminent danger' exception if the complainant's 'claims of imminent danger are conclusory or ridiculous.' " (Docket No. 19, at 2 n.2 (quoting *Chavis*, 618 F.3d at 170) (internal quotations and citation omitted)).   The Court also denied plaintiff's motion for preliminary injunctive relief, which had been filed before submission of the Amended Complaint.  (*Id.*, at 4-5.)

Plaintiff thereafter filed a Second Amended Complaint (Docket No. 20), as well as another motion for a temporary restraining order and preliminary injunctive relief (Docket No. 21).   The Court must now review the Second Amended Complaint and determine whether plaintiff has established "imminent danger of serious physical injury" under the three-strikes rule, 28 U.S.C. § 1915(g), and whether any or all the claims pled may proceed to service or shall be dismissed pursuant to 28 U.S.C. §§ 915(e)(2)(B) and 1915A.

But before proceeding to that task, the Court will deny Plaintiff's renewed motion for a temporary restraining order without prejudice, because plaintiff has not established either a likelihood of success on the merits nor raised serious questions going to the merits, with the balance of hardship tipping in his favor.  *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *Paulsen v. County of Nassau*, 925 F. 2d. 65, 68 (2d Cir. 1991).   Plaintiff's motion is little more than a long, convoluted, and unsubstantiated "supplemental complaint" concerning events that allegedly occurred following his "re-transfer" to Southport on August 28, 2012.   This is insufficient to warrant the extraordinary relief sought in the motion. Moreover, the New York State Department of Corrections and Community Supervision's website http://nysdoccslookup.doccs.ny.gov indicates that plaintiff is currently imprisoned at the Auburn Correctional Facility and, therefore, any requests for injunctive relief

regarding his imprisonment at Southport are moot.  *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996).[2]

## II.  DISCUSSION

**A.      Motion to Proceed *In Forma Pauperis*: Imminent Danger**

As noted, the Second Circuit held that had Chavis been allowed the opportunity to amend his Complaint, he "might very well have satisfied the imminent danger exception[.]" *Chavis*, 618 F.3d at 171.  The Circuit Court stated that plaintiff's attempt to expand upon his Complaint would have been sufficient "by itself" to allege imminent danger of serious physical injury.  These allegations stated that "one of the officers who had allegedly beaten him on July 16[, 2006] had 'verbally threaten[ed] to assault [him] again,' and that another of those officers had visited his cell 'for intimidation reasons.'" *Id.*, at 170.  The Second Circuit also stated that the additional allegations in Chavis's motion for a preliminary injunction "that some sixteen Defendants had threatened him with injury or death on about a dozen occasions in the previous several weeks," made his claim of imminent danger of serious physical injury "even stronger."  *Id.*, at 170-71.

The Second Amended Complaint is an often convoluted, disjointed, and confusing mass of unrelated allegations involving claims from at least three correctional facilities accruing between 2002 and 2012.  Nonetheless, it does re-allege some of the same facts that the Court of Appeals concluded were sufficient to establish imminent danger of serious

---

[2]Pursuant to Local Rules of Civil Procedure, Rule 5.2(d) it is a *pro se* litigant's obligation to inform the Court of any change of address in writing immediately and that a "failure to do so may result in dismissal of the case with prejudice."

physical injury.  (Docket No. 20-1, 20-2, and 20-3, at 2/15.)  Accordingly, plaintiff is granted permission to proceed *in forma pauperis.*

**B.      The Second Amended Complaint**

The Second Amended Complaint is approximately 75 pages long and was docketed in five separate parts.  The first part includes the caption and the names and titles of the 50 or so defendants.  (Docket No. 20, Second Amended Complaint.)  The next four parts were docketed as attachments to the main part and contain, in separately numbered paragraphs, plaintiff's claims or allegations against most, but not all of the 50 or so defendants.  (Docket Nos. 20-1, 20-2, 20-3 and 20-4.)  The Second Amended Complaint contains, in plaintiff's terms, a "First" (Docket Nos. 20-1 and 20-2) and "Second" (Docket Nos. 20-3, 20-4 and 20-5) Claim.  There are, in effect, scores of claims and allegations of misconduct at three different correctional facilities—Southport, Elmira and Attica—between 2002 and 2012.

Plaintiff has also taken advantage of the Second Circuit's decision in this matter. In addition to the claims asserted in plaintiff's initial Complaint arising from various acts or failures to act at Southport between 2002 and 2006 (Docket No. 20-1 and 20-2), plaintiff has added additional claims arising at Elmira, Attica, and Southport.  These claims are unrelated to and post-date the claims alleged in the initial Complaint.

**C.      Standard of Review**

**1.      28 U.S.C. §§ 1915(e)(2)(B) and 1915A**

Sections 1915(e)(2)(B) and 1915A(a) of 28 U.S.C. require the Court to conduct an initial screening of the Second Amended Complaint.  In evaluating this pleading, the Court

must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). While "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004).  "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted)).

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  A claim will be considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although a *pro se* complaint must contain sufficient factual allegations to meet the plausibility standard, it is held to less stringent standards than pleadings drafted by lawyers, *see Erickson*, 551 U.S. at 94, and the court is obliged to construe plaintiffs' pleadings liberally and interpret them as raising the strongest arguments they suggest.  *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was

attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d. Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)).   Based on its evaluation of the Second Amended Complaint, the Court finds that several of plaintiff's claims must be dismissed, either with or without prejudice, as set forth below, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), because they fail to state claims upon which relief may be granted.   The remaining claims against the remaining defendants may proceed to service at this time.

### 2.    Rule 8 of the Federal Rules of Civil Procedure

Rule 8 of the Federal Rules of Civil Procedure provides in relevant part that a pleading that states a claim for relief "must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule further provides that "[e]ach allegation must be simple, concise, and direct."   Fed. R. Civ. P. 8(d)(1). As the Second Circuit has observed:

> The statement should be plain because the principal function of the pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial. The statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.

*Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (internal quotation marks and citations omitted); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). "The key to Rule 8(a)'s requirements is whether adequate notice is given." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004).   Thus,

7

> When a complaint does not comply with the requirement that it be short and plain, the court has the power . . . to strike any portions that are redundant or immaterial . . . or to dismiss the complaint.

*Salahuddin*, 861 F.2d at 42.

The Second Circuit has discussed the application of Rule 8's pleading requirements following the United States Supreme Court's decision in *Erickson*, 551 U.S. at 94.  *See Boykin*, 521 F.3d at 213.  The Second Circuit noted that the Supreme Court "reiterated that '[s]pecific facts are not necessary,' and that the complainant 'need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Boykin*, 521 F.3d at 214 (quoting *Erickson*) (internal quotations omitted).  But in applying Rule 8 to complaints that contain too much detail, the Second Circuit has also emphasized that dismissal under Rule 8(a) "'is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised,'" *Shomo v. New York*, 374 Fed. Appx. 180, 182 (2d Cir. 2010) (quoting *Salahuddin*, 861 F.2d at 42).

Given, on the one hand, the Court's obligation to enforce the pleading requirements of Rule 8, but on the other hand, "to read[] *pro se* complaints with special solicitude and [to] interpret[] them to raise the strongest [claims] that they *suggest*[,]" *Shomo*, 374 Fed. Appx. at 183 (internal quotation and citation omitted), the Court notes that the Rule 8 "violations" in the Second Amended Complaint—*e.g.*, lack of short and plain statement—are not the type that would allow the Court to dismiss the Second Amended Complaint *in toto* with another opportunity to amend to comply with Rule 8, *see Shomo*, 374 Fed. Appx. at 183 (complaint is neither "unintelligible" nor a "labrynthian prolixity of

8

unrelated and vituperative charges that defied comprehension") (quoting *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972)).  As a result, the Court must review each claim against each of the 50 or so defendants and determine whether the claims are frivolous, malicious, fail to state a claim upon which relief can be granted, or seek relief against defendants entitled to immunity, *see* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *see also Shomo*, 374 Fed.Appx. at 183 (district court's dismissal on the basis of § 1915(e) was in error, because [it] did not review, in fact, the merits of plaintiff's claims to determine whether they were frivolous under the relevant civil rights statute . . . .")[3] and, if so, whether the claims can be dismissed *sua sponte* or cured by amendment.

### 3.    Review of Plaintiff's Claims[4]

Due to the length of the Second Amended Complaint (75 pages) and the number of defendants (50), the Court will examine the claims against each defendant individually.

---

[3]In *Shomo*, the district court, on 28 U.S.C. § 1915(e) review, was confronted with a complaint that named more than 25 defendants, had 295 separate paragraphs and was 100 pages long.  The court noted and addressed the complaint's obvious violations of Rules 8(a) and 10(b) and other deficiencies, and directed plaintiff to file an amended complaint that, *inter alia* (I) named no more than 20 individuals as defendants, (ii) was no more than 20 pages long, (iii) had separately numbered short and concise paragraphs, and (iv) addressed a particular claim in each paragraph and concisely described the actions of each defendant that plaintiff alleged caused him injury.  *Shomo v. State of New York*, 06-CV-0353A (Docket No. 6).  But rather than file a conforming amended complaint, plaintiff filed a notice of appeal and the Second Circuit held that the complaint was not so deficient as to require it be dismissed without prejudice at that stage in the litigation and that the court erred to the extent it ordered plaintiff to confine his amended complaint to a certain number of pages and defendants.  *Shomo*, 374 Fed.Appx. at 183.  The Second Circuit stated, as addressed above, that "the district court will remain free to consider whether each claim in the amended complaint states a claim upon which relief can be granted or is otherwise frivolous."  Thus, according to the dictates of *Shomo*, the Court must consider each claim against each named defendant and determine whether the claim fails to state a claim upon which relief can be granted or is otherwise frivolous or malicious.

[4]In light of the procedural posture of this case—initial review of the Second Amended Complaint pursuant to 28 U.S.C. § § 1915(e)(2)(B) and 1915A(b)—any recitation of facts is drawn exclusively from the Second Amended Complaint, the contents of which must be accepted as true for purposes of this review.  *See Erickson*, 551 U.S. at 93-94 (citing *Twombly*, 550 U.S. at 555-56 (2007)).

### a.    First Claim

The gravamen of plaintiff's claims throughout his "First Claim" is an alleged assault and use of excessive force against him at Southport on July 17, 2006.  (Docket No. 20-1, 20-2, First Claim.)  The defendants are alleged to have engaged in the use of excessive force, failed to intervene to prevent or stop the use of excessive, and failed to provide medical care following the incident to cover up the acts of the other defendants, are P. Chappius, M. DeLauro, P. Jayne, M. Deburgomaster, J. Squires, E. Delaney, J. Litwiler, J. Squires, T. Morton and T. Hana.  These defendants, as well as others set forth in the Orders section of this decision, will be served with the Summons and Second Amended Complaint.  The claims against the remaining defendants that fail to state a claim for relief and are thus being dismissed herein, with or without prejudice, are addressed below.  With respect to those defendants who are not addressed specifically below, the claims against them will proceed to service.

### i.    Knack (Docket No. 20-2, at 1/15)

Plaintiff alleges that on July 4, 2006, Knack, Correctional Officer,[5] Southport, "created a deliberate indifference" and "viciously aid[ed] his co-defendants by throwing plaintiff's boots "with excessive force" across the draft room.  He also alleges that Knack applied handcuffs so tightly to his visibly surgically scarred wrist that it caused him severe pain and dizziness.  These claims must be dismissed with prejudice because they fail to state a claim upon which relief can be granted.  *See Ashcroft*, 556 U.S. at 678 ("a

---

[5]In the Second Amended Complaint plaintiff refers to Correctional Officers and others as "Corruption Officers."  Such discourse will not be tolerated.

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (internal quotations and citation omitted).

Throwing a pair of boots across a room, even in a forceful or angry manner, does not rise to the level of a cognizable constitutional claim under § 1983. A claim brought under § 1983 is "not designed to rectify harassment or verbal abuse." *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citation omitted).

While placing handcuffs on an inmate too tightly may constitute excessive force, it does not rise to the level of a constitutional violation in the absence of some physical injury beyond temporary pain. *See Wilson v. Woodbourne*, 2012 WL 1377615, at *4 (N.D.N.Y. Mar. 21, 2012), *Report and Recommendation adopted by*, 2012 WL 1366950 (April 19, 2012) (citing *Schy v. Vermont*, 2 F. App'x 101, 101–102 (2d Cir. 2001) (painful handcuffing for two hours does not violate the Constitution); *Lynch ex rel. Lynch v. City of Mt. Vernon*, 567 F.Supp.2d 459, 468 (S.D.N.Y. 2008) (citing cases); *Wang v. Vahldieck*, 2012 WL 92423, at *7 (E.D.N.Y. Jan. 9, 2012) (dismissing excessive force claim where there was no physical injury associated with tight handcuffs); *Cunningham v. McCluskey*, 2011 WL 2791336, at *7 (S.D.N.Y. June 22, 2011) (tight handcuffing was not excessive force where plaintiff suffered no physical injury as a result).

Plaintiff in this case, while alleging severe pain and that he had a visible scar, does not allege any physical injury that occurred as a result of the handcuffing. (Docket No. 2-2, at 1/15). Moreover, while plaintiff's pleading is rife with conclusory allegations of "deliberate indifference" and "cruel and unusual punishment" (*id.*), there are no factual allegations that Knack placed the handcuffs on plaintiff's wrists with a sufficient level of

11

wantonness to state a violation of the Eighth Amendment. *See Wilson*, 2012 WL 1377615, at \*4. Accordingly, the claims against Knack are dismissed with prejudice. *See Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) ("[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile.") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir.1999) (holding that "a district court may properly deny leave when amendment would be futile")); *see also Cuocco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (finding leave to replead would be futile where the complaint, even when read liberally, did not "suggest[] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe").

### ii.    Carpenter (Docket No. 2-2, at 4/15)

Plaintiff alleges that on September 4, 2005,[6] Carpenter, Correctional Officer, Southport, engaged in "ticket retaliation" when he issued plaintiff a ticket (misbehavior report) after plaintiff stated that he would file a grievance for repeated cell searches. Plaintiff further alleges that Carpenter "conspired" with others to "cell relocate" plaintiff back to a higher level SHU (Level I), where plaintiff "suffered" mechanical restraints. Plaintiff's claim of retaliation against Carpenter is wholly conclusory and must be dismissed without prejudice.

Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Mount Healthy School District v. Doyle*, 429 U.S. 274, 287 (1977). To state a § 1983 retaliation claim, a prisoner must allege: (1) that he was engaged in constitutionally

---

[6]This date may be September 4, 2006, because later plaintiff alleges that there was a disciplinary hearing held in relation to a September 4, 2006 Ticket.  (Docket No. 20-2, at 5-6/15.)

protected conduct; and (2) that the prison official's conduct was taken in retaliation for the prisoner's protected conduct. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).  A finding of sufficient permissible reasons to justify state action is "readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority."  *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (citation omitted).  Moreover, courts recognize that retaliation claims by prisoners are "prone to abuse" since prisoners can claim retaliation for every decision they dislike.  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("Because we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care.") (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *see also Graham*, 89 F.3d at 79.  Thus, "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone [because i]n such a case, the prisoner has no factual basis for the claim . . . ." *Flaherty*, *supra*.

Plaintiff alleges only that he indicated verbally that he would file a grievance against Carpenter for repeated cell searches and that Carpenter filed a ticket.  Even assuming that verbally stating one would file a grievance is constitutionally protected conduct, there are no allegations to support a claim that a ticket issued by Carpenter was issued in retaliation for such statement.  Consequently, Plaintiff's retaliation claim against Carpenter is dismissed without prejudice.

### iii.     Wetzel (Docket No. 20-2, at 4/15)

It is alleged that Correctional Officer Wetzel "join[ed] the ticket retaliation of his codefendant [Carpenter] by cell relocating plaintiff'" and "stripping him of [his] level 2 SHU-Status."    Simply alleging that defendant had "bad faith intention" does not state an actionable claim of retaliation.    Moreover, the allegation that Wetzel bumped plaintiff causing him to hit his head against the wall is insufficient to state a claim of excessive force in violation of the Eighth Amendment.  *See Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999); *see, e.g.*, *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997) (summary dismissal affirmed where inmate failed to allege facts showing that defendants used force maliciously and sadistically to cause harm); *Reyes v. Koehler*, 815 F.Supp. 109, 114 (S.D.N.Y.1993) (dismissal of excessive force claim on pleadings where inmate failed to allege facts meeting either objective or subjective component; "momentary act" of pushing an inmate against a wall was "of such limited duration as to belie the inference of malicious or sadistic intent to cause harm"); *Rodriguez v. Murphy*, 1994 WL 735859 (W.D.N.Y. Jan. 3, 1995) (inmate failed to show force causing head laceration and leg injury was used maliciously and sadistically to cause harm).  Accordingly, plaintiff's claims against Wetzel are dismissed without prejudice.

### iv.     Ward (Docket No. 20-2, at 5/15)

Plaintiff alleges that Ward aided Carpenter and Wetzel's "ticket retaliation" by denying food trays on September 4-6, 2006.  To the extent the alleged denial of food trays is construed as a retaliation claim, it too must be dismissed without prejudice for the same reasons the retaliation claims against Carpenter and Wetzel are being dismissed.

14

To the extent this claim can be construed as an Eighth Amendment claim, however, it cannot be dismissed at this stage in the litigation. "[U]nder certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension[,]" *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir.1983) (citation omitted), but only if such substantial deprivation "presents an immediate danger to the inmate's health or well-being." *Chapdelaine. v. Keller*, 1998 WL 357350, at *12 (N.D.N.Y. Apr. 16, 1998) (citations omitted). A deprivation of two of the three daily meals may state an actionable Eighth Amendment claim if defendants cannot establish that the one meal served was nutritionally adequate. *Beckford v. Portuondo*, 151 F.Supp.2d 204, 213 (N.D.N.Y. 2001) (citing *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir.1977) (deprivation of two meals a day establishes "substantial deprivation of jail food normally served," shifting burden to defendants to establish that one meal was nutritionally adequate)); *see also Abascal v. Fleckenstein*, 2012 WL 638977, at *3 (Feb. 27, 2012) (summary judgment denied based on an alleged denial of seven meals in a four-day period). The Court acknowledges that plaintiff does not allege specifically how many meals he may have been denied but, at this stage of the litigation, the Court finds no basis to dismiss this claim before service.[7]

---

[7] *See McEachin v. McGuiness*, 357 F.3d 197, 200 (2d Cir. 2004) ("We have frequently reiterated that '[s]ua sponte dismissals of *pro se* prisoner petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by this Court.'") (quoting *Moorish Sci. Temple of Am. Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982)); *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (*per curiam*) ("*Sua sponte* dismissal of a *pro se* complaint prior to service of process is a draconian device, which is warranted only when the complaint lacks an arguable basis in law or fact. Where a colorable claim is made out, dismissal is improper prior to service of process and the defendants' answer.") (citations and internal quotations omitted)).

In allowing this or any other claim to proceed and directing a response, the Court expresses no opinion as to whether plaintiff's claims can withstand a properly filed dispositive motion.

### v.   D. Sullivan (Docket No. 20-2, at 7/15)

Plaintiff alleges that on September 4, 2006—the date of the alleged "Ticket Retaliation"—Sullivan issued a number of deprivation orders, including the denial of gallery showers and cell-cleaning supplies, before his disciplinary hearing two days later.  Plaintiff also alleges that Sullivan aided Carpenter's Ticket Retaliation.  This claim must be dismissed with prejudice for failure to state a claim upon which relief could be granted. *See Cuocco*, 222 F.3d at 112 (finding leave to replead would be futile).

To state a valid conditions-of-confinement claim under the Eighth Amendment, a plaintiff must allege: (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference."  *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir.1996)).  The denial of gallery showers and cleaning supplies for the two day period before the hearing does not rise to the level of being denied the "minimal civilized measures of life's necessities."  Moreover, plaintiff's allegations of deliberate indifference are wholly conclusory: this defendant "in bad faith had enforced extreme cruel and unusual punishment . . . in aiding the retaliatory ticketing of his wicked co-defendant of who this defendant is similar to in every way." (Docket No. 20-2, at 7/15.)  The claims against this defendant must therefore be dismissed with prejudice.

### vi.   Captain Sheahan (Docket No. 20-2, at 8/15)

Plaintiff alleges that on September 13, 2010, Captain Sheahan, Southport,

> "knowingly, intentionally and willfully with malice had conspired with [Chappius] and [Wenderline] to extend plaintiff's

16

> conditional release date . . . by 'erasing' it prior to plaintiff's completion of his final mandated by prison [sic] program (the ART=Non[-] Violence Program, after the Time-Allowance Committee Director [at] Southport . . . stated to [him] that release would be actionable if plaintiff completed the ART class prior to his 'CR' date."

(Docket No. 20-2, at 8/15.)

Plaintiff alleges that he completed the program before his CR date but was not released because of Sheahan's conduct.  Plaintiff adds a "Note" to this paragraph, noting that this occurred at Attica, where Chappius, whom plaintiff claims was also responsible for the assault at Southport back on July 17, 2006, was Deputy Superintendent, Security (Docket No. 20, at 2/15), thus "showing undeniably that the excessive harassment, condemnation and continued violations do warrant injunction relief in the claim/case." (Docket No. 2-2, at 8/15.)

To the extent that this claim alleges some type of conspiracy among multiple defendants and throughout a number of prison facilities, it is wholly conclusory and must be dismissed with prejudice.  *See, e.g.*, *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.) (*per curiam*), *cert. denied*, 464 U.S. 857 (1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Malsh v. Austin*, 901 F.Supp. 757, 763 (S.D.N.Y.1995) (To sustain a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights ... secured by the Constitution or the federal courts.") (citations and internal quotation marks omitted).

17

Plaintiff alleges no facts to support a "plausible" claim of conspiracy among Sheahan, Chappius, and Wenderline to violate his constitutional rights.

As to any underlying constitutional violation putatively alleged in this claim, an allegation that a defendant "erased" a conditional release date is simply insufficient to state a claim of a constitutional violation.  *See Aschcroft*, 556 U.S. at 678 (complaint must plead facts sufficient to state a claim that is plausible on its face.)  Moreover, to the extent plaintiff is challenging his current confinement, which is what he appears to be doing, his claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994).  *See Rose v. Connell*, 2005 WL 3077474 (N.D.N.Y. Nov. 16, 2005); *Odom v. Pataki*, 2001 WL 262742 (S.D.N.Y. Mar. 15, 2001).  Accordingly, plaintiff's claims against Sheahan are dismissed with prejudice.[8]  *See Cuocco*, 222 F.3d at 112.

### vii.   C. Washburn (Docket No. 20-2, at 8-9/15)

Plaintiff alleges that C. Washburn, a mail room clerk, sometime in "November or December (or even in October--2006/05)," denied him a legal advance to meet a court deadline.  "The constitutional right of access to the courts is violated where government officials obstruct legitimate efforts to seek judicial redress."  *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008) (internal quotation marks and alteration omitted).  To succeed on an access-to-court claim, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim.  *See Lewis v. Casey*, 518 U.S. 343, 349, 351–53 (1996); *see also Christopher v.*

---

[8]The Court notes that this and other claims that arose after the filing of the initial Complaint may or may not be properly joined in this action for any number of reasons.  *See* Fed.R.Civ.P. 20, 21.  This, however, is an issue that can be raised after service.

*Harbury*, 536 U.S. 413, 415 (2002) ("[O]ur cases rest on the recognition that the right [of access to the courts] is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court.").

Plaintiff fails to allege that a non-frivolous claim was actually hindered or prejudiced by the denial of a legal advance. *See Amaker v. Fischer*, 453 Fed.Appx. 59, 61, 2011 WL 6352494 (2d Cir. Dec. 20, 2011) (Summary Order) ("In asserting that he was prejudiced, [plaintiff] makes no attempt to show that his appeal . . . or any other pending litigation, had any merit.") (citing *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc) (explaining that, in asserting a denial-of-access-to-courts claim, a plaintiff cannot rely on "conclusory allegations"). Plaintiff merely asserts that he needed the advance to "meet a federal court deadline." (Docket No. 20-2, at 9/15). He does not allege any prejudice to the claim as a result of missing a deadline nor what the claim was or whether it had any merit. Accordingly, plaintiff's claim against Washburn must be dismissed without prejudice.

### viii.   K.H. Nepview (Docket No. 20-2, at 9/15)

Defendant K.H. Nepview appears to have been an Assistant Attorney General defending a case that plaintiff filed in federal court. She is alleged to have retaliated against plaintiff in November 2005, by "activating a ticket retaliation . . . after [plaintiff's] legal documents . . . objected to her [clients'] bad acts, which is [his] legal right under the federal discovery process." (Docket No. 20-2, at 9/15.) It appears that plaintiff is alleging that Nepview, upon receipt of documents plaintiff filed or served in a pending federal court action, somehow instigated the filing of a ticket against plaintiff. As noted above, courts

must review retaliation claims with a critical eye and such claims are properly dismissed at the pleading stage if the allegations are conclusory. *See Flaherty*, 713 F.2d at 13.

Plaintiff's claims against Nepview are wholly conclusory and must be dismissed. There are simply no factual allegations that Nepview somehow instigated or caused a misbehavior report to be filed against plaintiff for saying (writing) something negative against her clients in some litigation she was defending. This claim must therefore be dismissed with prejudice. *See Ellis*, 336 F.3d at 127.

### ix.    C. Retrossi (Docket No. 20-2, at 10/15)

Retrossi is alleged to have "willfully ticket retaliated" against plaintiff on December 14, 2005, when he presumably issued a misbehavior report after plaintiff's legal documents were submitted to the court and a copy served on defendants' counsel in the litigation (Nepview). For the reasons set forth above, this claim must be dismissed with prejudice. *See Ellis*, 336 F.3d at 127.

### x.    C. Kerbien (Docket No. 20-2, at 10/15)

Kerbien is alleged to have aided Retrossi in "ticket retaliation" after plaintiff served defendant Nepview with documents in a federal court action. For the reasons set forth above, this claim must be dismissed with prejudice. *See Ellis*, 336 F.3d at 127.

### xi.    A. Goorg (Docket No. 20-2, at 12/15)

Plaintiff alleges that between December 2005 and May 2006, Goorg was "relucant[]" to issue men's support briefs while plaintiff was in SHU, even though Goorg knew they had been issued in the past. Plaintiff further alleges that Goorg did not re-fill medication for an eye infection, which caused irritation, redness, and swelling. Plaintiff alleges that Goorg

acted in retaliation for unspecified grievances plaintiff filed against her in the past complaining about inadequate medical care.  (Docket No. 20-2, at 12/15.)  Again, to the extent plaintiff is alleging retaliation, that claim must be dismissed without prejudice as conclusory.  See *Flaherty*, 713 F.2d at 13.

With respect to the claim of inadequate medical care, it too must be dismissed, because plaintiff has not alleged either a serious medical need or deliberate indifference sufficient to state a claim under the Eighth Amendment.  A claim of inadequate medical care rises to the level of a constitutional violation only where the facts alleged show that defendant was deliberately indifferent to a plaintiff's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Ross v. Kelly*, 784 F.Supp. 35, 43-44 (W.D.N.Y. 1992).  "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'"  *Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted)).

Nothing in plaintiff's allegations indicate that Goorg chose to ignore a medical problem that could lead to plaintiff's further injury or the infliction of pain.  The Court finds that plaintiff's alleged medical needs do not constitute a serious medical need.  The Court also finds that the conclusory allegations set forth do not suggest any degree of deliberateness on Goorg's part and, therefore, plaintiff has failed to allege a constitutional violation.  Plaintiff's medical claim against Goorg must therefore be dismissed without prejudice.

21

### xii.   Walsh (Docket No. 20-2, at 11/15)

Plaintiff alleges that Walsh had a "reluctance" to provide men's support briefs and to refill certain medications and nutritional supplements provided by others in SHU previously.  Plaintiff again has failed to allege facts to support a serious medical need or that Walsh was deliberately indifferent to such need or needs.  He has not alleged a "deprivation of medical treatment [that] is, in objective terms, sufficiently serious—that is, [plaintiff] must prove that his medical need was a condition of urgency, one that may produce death, degeneration or extreme pain[,] nor has he alleged that Walsh acted with "a sufficiently culpable state of mind."  *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005).  Plaintiff alleges a "reluctance" to provide such briefs and medications only, not a denial, and he does not allege, other than in conclusory terms, that Walsh exhibited the degree of culpability necessary to state an Eighth Amendment deliberate indifference claim.  *See Gil v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).  Accordingly, plaintiff's claims against Walsh are dismissed without prejudice.

### xiii.   B. Bradt (Docket No. 20-2, at 11-12/15)

Plaintiff alleges that Bradt "committed all of the above . . . denials" that Walsh committed and disregarded plaintiff's eye and ear infections.  Like the allegations against Walsh, these allegations fail to state a violation of the Eighth Amendment and must be dismissed without prejudice.

### b.   Second Claim

The "Second Claim," as delineated in the Second Amended Complaint (Docket Nos. 20-3, 20-4 and 20-5), does not have, like the First Claim, a primary incident or event that

forms the basis of many of the claims—*viz.*, the alleged use of excessive force on July 17, 2006—but rather consists of a number of claims, often unrelated, against various defendants arising at three different facilities—Elmira, Attica, and Southport.

### i.    Nowakowski (20-3, at 3/15)

Plaintiff alleges that on "dates within several months" at Elmira, Nowakowski denied him the "right" to file grievances by "covering up many" of his grievances against other correctional officers and co-defendants herein.   It is well established that there is no constitutional right of access to an established inmate grievance program.   *Davis v. Buffardi*, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369–70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do not give rise to a cognizable § 1983 claim"); *Cancel v. Goord*, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983").   Accordingly, to the extent that plaintiff alleges that Nowakowski somehow impeded or ignored his grievances, he fails to state a claim under § 1983.

Additionally, to the extent plaintiff alleges that the interference with the grievance process denied him his right to access the courts by impeding his ability to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act of 1996 ("PLRA"), as amended 42 U.S.C. § 1997e(a), this too fails to state a claim upon which relief may be granted.   *See White v. Clark*, 2012 WL 5877160, at *8 (N.D.N.Y. Nov. 20,

2012).  An inmate who claims his access to the grievance process has been interfered with or hindered by the actions of prison officials is excused from the PLRA's exhaustion requirement and allowed to file an action in the absence of exhaustion.  *Id.* (citing *Hemphill v. New York*, 380 F.3d 680, 686–91 (2d Cir. 2004)).  Accordingly, plaintiff's claims against Nowakowski are dismissed with prejudice.

### ii.    Lt. John Doe (Docket No. 20-3, at 3/15)[9]

Plaintiff alleges that sometime in the summer of 2009 at Elmira, Lt. John Doe denied him the right to call a witness during a Tier II Hearing.  According to plaintiff, this witness's testimony could have changed the outcome of the hearing.  Plaintiff, however, does not allege that he had a liberty interest that was denied without due process.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

An inmate asserting a violation of his right to due process in the context of a disciplinary hearing must allege that he possessed a protected liberty interest.  *See, e.g., Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001).  To do so, a prisoner must allege that he suffered a deprivation that was "atypical and significant" in relation to ordinary prison life.  *Sandin*, 515 U.S. at 484; *see also Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996) (To allege a due process claim, an inmate must allege that the "conditions of his [disciplinary] confinement . . . were dramatically different from the basic conditions of [his] indeterminate sentence.").  "Courts in this Circuit routinely hold that an inmate's confinement in special housing for 101 days or less absent additional egregious

---

[9]This John Doe defendant is not listed in the caption nor in the listing of defendants in the Second Amended Complaint.

circumstances, does not implicate a liberty interest." *Durran v. Selsky*, 251 F.Supp.2d 1208, 1214 (S.D.N.Y. 2003).

Plaintiff's allegations are silent as to the duration and type of his disciplinary confinement (*e.g.*, SHU, keeplock, etc.) and the conditions of such confinement. *See, e.g.*, *Mingo v. Fischer*, 2014 WL 2918599, at *5 (N.D.N.Y. June 26, 2014) ("The duration of the challenged confinement, while not determinative, is a significant factor under *Sandin*.") Accordingly, plaintiff has failed to allege a cognizable due process claim against Lt. John Doe.   The claim is dismissed without prejudice, assuming plaintiff can identify this defendant.

### iii.    Hughes (Docket No. 20-3, at 11/15)

Plaintiff alleges that on April 19, 2012, at Attica, Hughes "aided" many food tray denials while plaintiff was under some type of protective custody ("IPC/PC/LP") and never "cared to correct" the food tray denial to plaintiff and other IPC inmates on "19 Gallery." (Docket No. 20-3, 11/15.)  As noted above, a deprivation of two of the three daily meals may state an actionable Eighth Amendment claim if defendants cannot establish that the one meal served was nutritionally adequate.  Plaintiff, however, does not allege how many meals he was denied or if the denial(s) occurred on more than one day.  He also does not allege that Hughes was personally involved in the food tray denial.  He alleges only that Hughes visited his cell on April 19, 2012, after he had contacted Albany to complain about the food denial, mail theft, and grievance interference, and that Hughes "had been part of his codefendants retaliatory group in the Elmira Prison, and then joined his codefendants in the Attica Prison (i.e., Bradt) with his Captain rank rising to the position of new Deputy

25

of Security in Attica Prison."  (Docket No. 20-3, 11/15.)  These allegations are wholly

conclusory regarding both a conspiracy to retaliate and retaliation, and they fail to allege

Hughes's personal involvement in some unspecified number of food tray denials.  *See*

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (setting forth five categories under

which a supervisory official may be personally involved for liability purposes under §

1983).  Accordingly, the claims against Hughes are dismissed without prejudice.

### iv.      G. Struebel (Docket No. 20-3, at 13/15)

Plaintiff alleges that Struebel "alter[ed]" the Inmate Grievance Program at Attica

between 2010 and 2012, by denying or covering up grievances filed by plaintiff at Attica.

As noted above, an inmate has no constitutional right to a grievance process.  *See Davis,*

2005 WL 1174088, at *3; *Shell*, 365 F.Supp.2d at 369–70; *Cancel*, 2001 WL 303713, at

*3.  Accordingly, to the extent that plaintiff alleges that Struebel somehow altered or

impeded his grievances, he fails to state a claim under § 1983.  To the extent plaintiff

alleges "retaliation" or some conspiratorial participation in acts of misconduct by covering

up plaintiff's grievances, those claims are wholly conclusory and fail to state an actionable

claim for relief.  Plaintiff's claims against Struebel are therefore dismissed with prejudice.

*See Cuocco*, 222 F.3d at 112.

### v.      DePasquale (Docket No. 20-3, at 13/15)

Plaintiff alleges that on some date in 2011 at Attica, DePasquale confiscated a piece

of his outgoing mail addressed to the Inspector General.  This claim must be dismissed

with prejudice.  Even assuming plaintiff's letter to the Inspector General was legal mail,

there are no factual allegations that DePasquale's action actually "hindered [plaintiff's]

efforts to pursue a legal claim" or otherwise prejudiced a legal action as required to state a claim for denial of access to the courts due to interference with legal mail.  *Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir.1997) (internal quotation omitted).  Moreover, plaintiff does not allege that this defendant "regularly and unjustifiably" interfered with his personal mail, and thus he fails to allege a First Amendment interference-with-mail claim.  *See Davis v. Goord,* 320 F.3d 346, 351 (2d Cir. 2003) (internal quotation omitted).

### vi.      G. Biehl (Docket No. 20-3, at 13/15)

Plaintiff alleges that on two unspecified dates at Attica, Biehl, as a Hearing Officer, denied him due process at two Tier II hearings.  Plaintiff alleges that at the first hearing, Biehl refused to let him present witnesses and failed to read "his entire supposed evidence into the Hearing Record."  (Docket No. 20-3, at 13/15.)  During the second Hearing, Biehl allegedly denied plaintiff the opportunity to present an "expert witness."  Biehl sentenced plaintiff to 30-days keeplock[10] following each hearing, which due to "IPC cell stabilization," caused plaintiff to lose outdoor recreation and out-of-cell meals at the messhall.  (*Id.*)

"Although not the only factor to be considered, the duration of a disciplinary keeplock confinement remains significant under *Sandin*, 515 U.S. at 484."  *Thomson v. Laclair*, 2008 WL 191212, at *3 (N.D.N.Y. Jan. 22, 2008) (citing *Colon* v. Howard, 215 F.3d 227, 231 (2d Cir. 2000).  As noted, "the Second Circuit has suggested that SHU confinements shorter than 101 days are not, in and of themselves, enough to show that conditions suffered by a plaintiff constitute an 'atypical and significant hardship' on an

---

[10]"Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities."  *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6.

inmate in relation to the ordinary incidents of prison life." *McEachin*, 357 F.3d at 200. Moreover, the deprivation of exercise and access to communal religious services has been held not to rise to a level of "a typical and significant hardship." *Arce v. Walker*, 139 F.3d 329, 332 (2d Cir. 1998); *see also Pilgrim v. Bruce*, 2008 WL 2003792, at *15 (N.D.N.Y. May 7, 2008) (plaintiff's conclusory allegations, which notably do not include claims that he was denied food, clothing, bedding, heat, running water, toiletries, or medicine during his 60 days in keeplock, fail to establish that he was subjected to more severe conditions than in normal restrictive confinement)*; Holland v. Goord*, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (77 days in keeplock during which plaintiff was deprived of TV, phone, packages, and commissary, and was unable to go to Muslim services and classes, did not create a protected liberty interest); *Valentino v. Jacobson*, 1999 WL 14685, at *3 (S.D.N.Y. Jan. 14, 1999) (inmate in punitive segregation for 57 days and denied access to religious services did not amount to an atypical and significant hardship); *Edmonson v. Coughlin*, 1996 WL 622626, at *4–5 (W.D.N.Y. Oct. 4, 1996) (citing cases for the proposition that courts within the Second Circuit tend to rule, as a matter of law, that "disciplinary keeplock or SHU confinement to 60 days or less in New York prisons is not an atypical or significant hardship in relation to the ordinary incidents of prison life.") Accordingly, plaintiff has failed to allege a due process violation and this claim must be dismissed without prejudice.

### vii.   S. Dolce (20-3, at 15/15)

Plaintiff alleges that in 2010 and 2011, Dolce, Deputy Superintendent, Programs, Attica, denied him his "due process right to enter the college program" and "meet" his conditional release date. (Docket No. 20-3, 15/15.) He also alleges that Dolce "stripped"

him of his school program after he had passed "nearly 100 classroom tests" in 2011, by "secretly us[ing] [his] forced illegal stabilization under 'IPC' cell confinement . . . ." (*Id.*) Plaintiff alleges that this "diabolical reason for doing so" was "cruel and unusual punishment," stemming from "deliberate indifference!" (*Id.*)

As noted above, to state a due process claim, a prisoner must possess a protected liberty interest. *See Sandin*, 515 U.S. at 484-85 (1995). "The Supreme Court has stated, however, that prisoners do not have a liberty interest under the Federal Constitution in 'prisoner classifications and eligibility for rehabilitative programs in the federal system.'" *Green v. Armstrong*, 1999 WL 642910, at *2 (2d Cir. 1999) (Summary Order) (quoting *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) and citing *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir.1980) (same)); *see also Frazier v. Coughlin*, 81 F.3d 313 (2d Cir. 1996) (per curiam) (under *Sandin*, prisoner has no liberty interest in an in-prison job assignment in the prison laundry); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995) (under *Sandin*, prisoner has no liberty or property interest in an in-prison job assignment).

Plaintiff has thus failed to allege that he suffered a liberty interest when he was denied entry to a school program at Attica. This claim must therefore be dismissed with prejudice. *See, e.g.*, *Thompson v. LaClair*, 2009 WL 2762164, at *8 (N.D.N.Y. Jan. 30, 2009) (plaintiff's inability to participate in ASAT, ART, and MAWP programs not atypical and significant hardship); *Deutsch v. United States*, 943 F.Supp. 276, 280 (W.D.N.Y. 1996) (holding that prisoners do not have a protected liberty interest in rehabilitative programs).

### viii.   T. Willis (Docket No. 20-3, at 15/15; 20-4, at 1/15)

Willis is alleged to have confiscated mail that plaintiff sent to another prison employee on one occasion in 2011 and ticketed plaintiff for submitting the letter.  For the same reasons set forth above regarding plaintiff's claims against DePasquale, this claim is dismissed with prejudice.

### ix.   Burns (Docket No. 20-4, at 2/15)

Plaintiff alleges that Burns, a Lieutenant at Attica, "joined his codefendants in all the above stated" and denied plaintiff's request for a color photograph of his cell after a fire that he claims was set by some of the defendants herein.  To the extent plaintiff claims that Burns conspired with other non-identified codefendants "in all the above stated [claims]" by not providing plaintiff color copies of photographs, it fails to state a claim upon which relief can be granted and must be dismissed.  The failure to provide plaintiff with color photographs of his cell does not rise to the level of a constitutional violation actionable under § 1983.  Accordingly, this claim is dismissed with prejudice.

### x.   K. Bellamy (Docket No. 20-4, at 3/15)

Plaintiff alleges in wholly general terms that defendant Bellamy, Director, Central Office Review Committee ("CORC"), over the course of eight years, violated his rights to due process by "'secretly supporting' her codefendants' unceasing violations of the [Inmate Grievance Program (IGP)/Inmate Grievance Review Committee (IGRC)]" at Attica, Elmira, and Southport (Docket No. 20-4,at 3/15) by, presumably, having CORC uphold or affirm the denials or other decisions on plaintiff's numerous grievances filed over the years.  This

claim must be dismissed with prejudice for failure to state a claim upon which relief can be granted.

First, there is no due process or other constitutional right in an inmate grievance process.  *See Davis*, 2005 WL 1174088, at *3 ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell*, 365 F.Supp.2d at 369-70 ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel*, 2001 WL 303713, at *3 ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983").

Second, to the extent plaintiff alleges a conspiracy between Bellamy and certain other defendants to violate some unspecified constitutional rights, it is wholly conclusory and fails to allege any facts to support a conspiracy to violate plaintiff's rights in violation of § 1983.  *See, e.g.*, *Sommer*, 709 F.2d at 175 ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Malsh*, 901 F.Supp. at 763 (To sustain a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights ... secured by the Constitution or the federal courts.") (citations and internal quotations omitted)).

### xi.   J. O'Gorman (Docket No. 20-4, at 3/15)

Plaintiff alleges that J. O'Gorman, Director, Crisis Intervention Unit, between 2011 and 2012, violated his rights by "showing plaintiff reluctance to correct his codefendants' bad actions" and to "effectively investigate on behalf of plaintiff's lettered contacts . . . ." (Docket No. 20-4, 3-4/15.)  This claim must be dismissed with prejudice because (1) there are no allegations of O'Gorman's personal involvement in any alleged constitutional violations, *see Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (To state a cognizable claim against an individual defendant, plaintiff must show that the defendant was personally involved in the alleged constitutional deprivation), and (2) plaintiff has no constitutional right to an effective investigation of his complaints against other prison employees, *see, e.g., Pine v. Seally*, 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) (Report & Recommendation) ("[T]he law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials."); *Bernstein v. N.Y.*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials.") (internal quotation, brackets, and ellipsis omitted)).

### xii.   Bergio (Docket No. 20-4, at 4/15)

Plaintiff alleges that on "several dates" in 2011 and 2012, Bergio, Correctional Officer, IPC/PC Unit, "ignored" the theft of food trays by inmate porters.  While "a substantial deprivation of food may well be recognized as being of constitutional dimension[,]" *Robles*, 725 F.2d at 15, plaintiff's claims fail to state an Eighth Amendment violation inasmuch as they do not allege any facts to support a substantial deprivation of

food or that Bergio was personally involved in said deprivation.  Accordingly, plaintiff's claims against Bergio are dismissed without prejudice.

### xiii.    Curren (20-4, at 8/15)

Plaintiff alleges that Curren "enforc[ed] a 'genocidal' memorandum" of codefendant P. Chappius at Southport, which violated New York State Department of Corrections' ("DOCS")[11] Directive, No. 4933, and his First Amendment right to "cultural freedom of self expression in African Cultural Dress."  (Docket No. 20-4, at 8/15.)  He also alleges that Curren violated his rights to due process when he (1) "personally prohibited" him from returning to a Tier III "Hearing Conclusion," which resulted in a finding of guilt and an extended SHU sentence (*id.*), and (2) ignored DOCS' Directives Nos. 4914 (Hair Grooming Standards) and 4933 (SHU Regulations), and prohibited plaintiff from outdoor recreation and galley showers by enforcing the "genocidal" memorandum.

Plaintiff's claims fail to state claim for relief under both the First (religion) and Fourteenth Amendments (due process).  He does not allege any facts to support either a claim that he was denied his First Amendment right to freely practice his religion or a claim that not being present at the conclusion of a Tier III Hearing violated his right to due process.  Also, the violation of a DOCS Directive, without more, does not state a constitutional deprivation.  *See Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir. 1987); *see also Ramirez v. Holmes*, 921 F.Supp. 204, 208 (S.D.N.Y. 1996) ("As a general rule, there is no federal right to have state law properly administered.")   The hyperbolic and

---

[11]Subsequent to the events giving rise to this litigation, DOCS merged with the Division of Parole to form the Department of Corrections and Community Supervision.  The agency's former name is used here.

inflammatory allegation that Curren enforced Chappius' "genocidal" memorandum is insufficient to state a claim under § 1983.   There are no allegations regarding what the memorandum stated nor how it denied plaintiff the ability to freely practice his religion or deprived him of due process.   Accordingly, the claim against Curren is dismissed without prejudice.

### xiv.    B. Bradt (20-4, at 8/15)

Plaintiff alleges that on some unspecified dates between 2002 and 2006 at Southport, defendant B. Bradt denied him men's support briefs and medication for an ear infection.   As noted above, a claim of inadequate medical care rises to the level of a constitutional violation only where the facts alleged show that defendant was deliberately indifferent to a plaintiff's serious medical needs.  *Estelle*, 429 U.S. at 104-05 (1976)  "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison*, 219 F.3d at 136-137 (quoting *Chance*, 143 F.3d at 702 (internal quotation marks omitted)).   "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  *Chance*, 143 F.3d at 703

Nothing in plaintiff's allegations indicate this defendant chose to ignore a medical problem that could lead to plaintiff's further injury.  Plaintiff alleges that defendant "enjoyed" his "deteriorating 'ear pain,'" but, as pled, the Court finds that plaintiff's ear infection did not constitute a serious medical need.  The Court also finds that the conclusory allegations set

forth do not suggest any degree of deliberateness on B. Bradt's part and, therefore, plaintiff has failed to allege a claim of deliberate indifference that is "plausible on its face."  *See Ashcroft*, 556 U.S. at 678 ( "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotations and citation omitted).  Accordingly, plaintiff's claim against B.Bradt must be dismissed without prejudice.

### xv.    Shumacker (Docket No. 20-4, at 10/15)

Plaintiff alleges that this defendant violated his due process rights by "enforcing himself on [plaintiff] as [an] alleged 'assistance' for a retaliatory ticket for the 7-17-06 incident."  (Docket No. 20-4, at 10/15.)  Plaintiff does not allege how this alleged action by Shumacker denied him due process at the hearing held in relation to the misbehavior report (ticket) issued following the alleged assault on July 17, 2006.  Plaintiff alleges only that Shumacker "caus[ed] [his] hearing sentence to be extensive for a retaliatory 'cover up' Tier 3 Ticket that would keep [him] inside SHU-Punitive Segregation Housing . . . ." (Docket No. 20-4, at 10/15.)  This does not allege a violation of due process nor does it allege that Shumacker was personally involved in the SHU sentencing following the hearing.  Accordingly, this claim is dismissed without prejudice.

### xvi.    M. McGinnis (20-4, at 10/15)

Plaintiff alleges that this defendant engaged in "Ticket Retaliation" after he made a statement that he was going to file a grievance against him.  This claim of retaliation is wholly conclusory and fails to state a claim upon which relief can be granted.  *Flaherty*, 713 F.2d at 13 ("a complaint which alleges retaliation in wholly conclusory terms may safely be

dismissed on the pleadings alone [because i]n such a case, the prisoner has no factual basis for the claim . . . .").  To allege an actionable retaliation claim, a prisoner must allege that he engaged in protected conduct and that the prison official's conduct was taken in retaliation for the prisoner's protected conduct.  *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).  Even assuming arguendo that threatening to file a grievance against McGinnis was protected conduct, *see Gibson v. Fischer*, 2014 WL 7178346, at (N.D.N.Y. Dec. 15, 2014 (Report and Recommendation  approved and adopted in its entirety) (noting conflict among courts regarding whether a threat to file a grievance is protected activity and collecting cases), there are no allegations that the filing of a ticket against plaintiff was taken in retaliation for said threat.  There must be a "causal connection between the protected speech and the adverse action."  *See Gill v. Pidlypchak*, 389 F.3d 379, (2004) (internal quotation and citation omitted)).  There are simply no allegations that plaintiff's threat to file a grievance was "a substantial or motivating factor" for the filing of a misbehavior report. *Mt. Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 287.  Accordingly, plaintiff's claims of retaliation against McGinnis are dismissed without prejudice.

### xvii.   Defendants S. Skowley, J. Cieslak, J. Irrizary, Manos, Furhman, J. Roupp and  Tessmer

These defendants are listed or identified in the "Defendants Information" Section of the Second Amended Complaint (Docket No. 20, at 5-9, 11/15) but, upon the Court's review of the 75-page Second Amended Complaint, no allegations against them specifically could be located.  Accordingly, these defendants are dismissed from this action with prejudice.

## III.  CONCLUSION

For the reasons set forth above, plaintiff's request to proceed *in forma pauperis* is granted, and the claims against the following defendants are dismissed *with* prejudice, pursuant to 28 U.S.C. § § 1915(e) and 1915A: D. Sullivan, M. Sheahan, K. Nepview, C. Retrossi, C. Kerbien, Nowakowski, G. Struebel, J. DePasquale, S. Dolce, T. Willis, Mr. Burns, K. Bellamy, J. O'Gorman, Mr. Knack, S. Skowley, J. Cieslak, J. Irrizary, Manos, Furhman, J. Roupp, and Tessmer.

In addition, plaintiff's claims against the following defendants are dismissed *without* prejudice, pursuant to 28 U.S.C. § § 1915(e) and 1915A: Mr. Gleason, Mr. Carpenter, Mr. Wetzel, Mr. Ward (retaliation claim only), C. Washburn, A. Goorg, Ms. Walsh, B. Bradt, Lt. John Doe, Mr. Hughes, G. Biehl, M. Bergio, B. Bradt, Mr. Shumacker, and M. McGinnis.[12]

The Clerk of Court is directed to cause the summons and Second Amended Complaint to served on the following defendants: P. Chappius, M. DeLauro, P. Jayne, M. Debugomaster, J. Squires, J. Litwiler, E. Delany, T. Morton, T. Hana, M. Miles, Ward (denial of food trays claim only), P. Corcoran, S. Wenderline, M. Bradt, L. Hale, Mr. Fitz, J. Whitford, W. Murray, J. Esgrow, D. Selsky, and R. Barnard.

## IV.  ORDERS

IT HEREBY IS ORDERED, that plaintiff is GRANTED permission to proceed *in forma pauperis*;

---

[12]Should plaintiff seek to pursue one or more of the claims dismissed without prejudice by the Court herein, he may file a motion to file a third amended complaint and attach to the motion a proposed third amended complaint. *See* Fed.R.Civ.P. 15(a)(2); Loc.R.Civ.P. 15(a). Any proposed Third Amended Complaint shall not include any defendants who have been dismissed herein with prejudice.

37

FURTHER, that plaintiff's motion for a temporary restraining order and preliminary injunctive relief (Docket No. 21) is DENIED;

FURTHER, that the claims against the following defendants are DISMISSED WITH PREJUDICE: D. Sullivan, M. Sheahan, K. Nepview, C. Retrossi, C. Kerbien, Nowakowski, G. Struebel, J. DePasquale, S. Dolce, T. Willis, Mr. Burns, K. Bellamy, J. O'Gorman, Mr. Knack, S. Skowley, J. Cieslak, J. Irrizary, Manos, Furhman, J. Roupp, and Tessmer.

FURTHER, that the claims against the following defendants are DISMISSED WITHOUT PREJUDICE: Mr. Gleason, Mr. Carpenter, Mr. Wetzel, Mr. Ward (retaliation claim only), C. Washburn, A. Goorg, Ms. Walsh, B. Bradt, Lt. John Doe, Mr. Hughes, G. Biehl, M. Bergio, B. Bradt, Mr. Shumacker, and M. McGinnis;

FURTHER, that the Clerk of Court is directed to terminate defendants D. Sullivan, M. Sheahan, K. Nepview, C. Retrossi, C. Kerbien, Nowakowski, G. Struebel, J. DePasquale, S. Dolce, T. Willis, Mr. Burns, K. Bellamy, J. O'Gorman, S. Skowley, J. Cieslak, J. Irrizary, Manos, Furhman, J. Roupp, Tessmer, Mr. Gleason, Mr. Knack, Mr. Carpenter, Mr. Wetzel, Mr. Ward (retaliation claim only), C. Washburn, A. Goorg, Ms. Walsh, B. Bradt, Lt. John Doe, Mr. Hughes, G. Biehl, M. Bergio, B. Bradt, Mr. Shumacker, and M. McGinnis as parties to this action;

FURTHER, that the Clerk of Court is directed to cause the United States Marshal to serve copies of the Summons, Second Amended Complaint, and this Order  upon defendants P. Chappius, M. DeLauro, P. Jayne, M. Debugomaster, J. Squires, J. Litwiler, E. Delany, T. Morton, T. Hana, M. Miles, Ward (denial of food trays claim only), P. Corcoran, S. Wenderline, M. Bradt, L. Hale, Mr. Fitz, J. Whitford, W. Murray, J. Esgrow,

D. Selsky and R. Barnard, without plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;[13]

FURTHER, the Clerk of Court is directed to forward a copy of this Order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office <Michael.Russo@ag.ny.gov>; and

FURTHER, that, pursuant to 42 U.S.C. § 1997e(g), the defendants are directed to answer the Second Amended Complaint.


SO ORDERED.

Dated:      March 30, 2015
            Buffalo, New York


                              /s/William M. Skretny
                              WILLIAM M. SKRETNY
                              Senior United States District Judge

---

[13]Pursuant to a Standing Order of Court, filed September 28, 2012, a defendant will have 60 days to file and serve an answer or other responsive pleading, *see* Fed.R.Civ.P. 12(a)-(b), if the defendant and/or the defendant's agent has returned an Acknowledgment of Receipt of Service by Mail Form within 30 days of receipt of the summons and complaint by mail pursuant to N.Y.C.P.L.R. § 312-a.