UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GEORGE CHAVIS, 91-A-3261,

                    Plaintiff,

          -vs-

PAUL CHAPPIUS, et al.,

                  Defendants.
_____

06-CV-0543-WMS-MJR

**Report and Recommendation**

## I.    Introduction

This case has been referred to the undersigned by Hon. William M. Skretny for all pre-trial matters, including preparation of a Report and Recommendation on dispositive motions. (Dkt. No. 30). Currently pending before the Court are the following six motions: Plaintiff's Motions for Temporary Restraining Order / Emergency Injunctive Relief (Dkt. Nos. 36, 48); Plaintiff's motions for the Appointment of Counsel (Dkt. Nos. 38, 42); and Defendants' motions to Dismiss for Failure to State a Claim (Dkt. Nos. 40, 41).

## II.    Factual Background and Procedural History

Plaintiff George Chavis ("Plaintiff"), an inmate currently incarcerated at the Great Meadow Correctional Facility ("CF"), initially commenced this action in 2006 against approximately 32 employees of Southport CF and the State Department of Corrections and Community Supervision ("DOCCS"), alleging various instances of misconduct including, *inter alia*, denial of medical treatment, excessive force, and due process violations. (Dkt. No. 1). While the Court presumes the parties' familiarity with the protracted history of this case, a brief summary of the pertinent facts is provided below.

Plaintiff is a familiar "three-strikes" litigant,[1] having filed dozens of complaints in this District and others within the Circuit. He was initially denied *in forma pauperis* ("IFP") status, which prompted a Motion to Reconsider / Amend and an appeal to the Second Circuit Court of Appeals. (Dkt. Nos. 1-9). On September 13, 2010, pursuant to a Mandate of the Second Circuit (Dkt. No. 11), Plaintiff was directed to file a Second Amended Complaint. He thereafter filed a Second Amended Complaint ("2d Am. Compl."), Dkt. No. 20), as well as a motion for a Temporary Restraining Order ("TRO") / Preliminary Injunctive Relief. (Docket No. 21).

On March 31, 2015, Hon. William M. Skretny conducted an initial screening of the Second Amended Complaint and pared down Plaintiff's claims to include approximately 21 defendants, granted Plaintiff's request to proceed IFP, and denied his motions for injunctive relief. (Dkt. No. 23).  The Second Amended Complaint is currently the operative pleading.

## III.    Discussion

### A.    IFP Status / Material Misrepresentation

As an initial matter, the Court addresses Defendants' request that Plaintiff's IFP status be revoked pursuant to 28 U.S.C. § 1915(g), and alternatively, for dismissal of the Second Amended Complaint as a sanction under Fed. R. Civ. Proc. 11. (Dkt. No. 40-1 at 15-16, 18-21).

---

[1] The three-strikes provision was adopted as part of the Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1995), and provides that "[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The principal purpose of the statute was to deter frivolous prisoner litigation. *See Nicholas v. Tucker*, 114 F.3d 17, 19 (2d Cir. 1997).

As a frequent litigator and having filed dozens of lawsuits in this Circuit (most of which were dismissed as frivolous or for failure to state a claim), Plaintiff lost his right to proceed IFP under the so-called three strikes rule unless he could establish that he was "under imminent danger of serious physical injury" at the time of filing. 28 U.S.C. § 1915(g). Indeed, Plaintiff has filed at least ten lawsuits in the Western District of New York alone, five of which advance the same or similar claims to those presented here.[2] (Dkt. No. 40-2, Exs. B, D-K). Plaintiff did not disclose these proceedings in his Second Amended Complaint as he was required to do.[3] Despite Plaintiff's failure to provide a reliable conveyance of his litigation history to the Court, Plaintiff was still granted IFP status on the sole basis that the Second Circuit concluded that certain of the alleged facts were sufficient to establish imminent danger of serious physical injury. Thus, given the "long and tortured history of this case," *see Chavis v. Chappius*, No. 06-CV-543S, 2015 WL 1472117, at *1 (W.D.N.Y. Mar. 31, 2015), and the Second Circuit's Mandate, the Court will not recommend that IFP status be revoked, in the interest of judicial economy and to press Plaintiff's claims along toward what will hopefully be a swift resolution on the merits. It is for the same reasons that the Court recommends that the

---

[2] At the time of Defendants' motion, Plaintiff had filed nearly 30 lawsuits in the District Courts within the Second Circuit. *Id.*

[3] In Section 4 of the Complaint form, which asks whether the plaintiff has begun any other lawsuits in Federal Court which relate to imprisonment, Plaintiff listed only the current action. (2d Am. Compl. at 14). The Court reiterates that, while it is cognizant of Plaintiff's extraordinary litigation history, it is difficult, at this juncture, to determine whether the issues in this case have been previously litigated and decided given his inordinate attempts at filing suit. Plaintiff is therefore cautioned that the special solicitude he normally enjoys may be limited following this stage of the proceedings. *See Bell v. Lasacelli*, No. 08–CV–0287A, 2009 WL 1032857, at *3 (W.D.N.Y. Apr.13, 2009); *see also, e.g.*, *Lipin v. Hunt*, 573 F.Supp.2d 836, 843, 844 (S.D.N.Y. 2008) ("a court's special solicitude towards *pro se* litigants does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights.") (internal quotations, parenthesis and citations omitted.).

Second Amended Complaint not be dismissed under Rule 11 based on Plaintiff's material misrepresentations. *See Toliver v. Fischer*, No. 12-CV-77, 2014 WL 411569, at *7 (N.D.N.Y. Feb. 3, 2014) (declining to impose sanctions, including revocation of plaintiff's IFP status, where plaintiff failed to fully disclose litigation history, observing that "[t]he imposition of sanctions is a discretionary decision."); *but see Cruz v. Zwart*, No. 13-CV-1287, 2014 WL 4771664, at *4 (N.D.N.Y. Sept. 24, 2014) (revoking IFP status and dismissing action where plaintiff materially misrepresented his litigation history; collecting cases holding the same) (citing *Hurt v. Social Sec. Admin.*, 544 F.3d 308, 309–310 (D.C.Cir. 2008) ("This Circuit grants IFP status to various plaintiffs, but asserts its discretion to deny or revoke this privilege for abusive litigants, looking to 'the number, content, frequency, and disposition of their previous filings[.]").

In light of the long and complicated procedural history that has caused this case to languish on the Court's docket, it is recommended that Plaintiff's IFP status remain undisturbed for purposes of these proceedings,[4] and it is further recommended that Defendants' request for sanctions also be denied, but without prejudice to Defendants' ability to raise that issue at a later stage in the litigation.

The Court next turns to Defendants' arguments for dismissal pursuant to Fed. R. Civ. Proc. 12(b). (Dkt. Nos. 40, 41).

---

[4] The Court is mindful that Plaintiff's IFP status has previously been revoked. *Chavis v. Curlee*, No. 06-CV-0049, 2008 WL 508694 (N.D.N.Y. Feb. 21, 2008) (noting Plaintiff's misrepresentation of his previous litigation history and recommending sanctions).

**B.      Insufficient Service of Process**

Defendants move to dismiss the Second Amended Complaint on the basis of,

*inter alia*, insufficient service of process pursuant to Fed. R. Civ. Proc. 4(m) and

12(b)(5).[5] (Dkt. No. 40-1 at 7-11).

"Before a federal court may exercise personal jurisdiction over a defendant, the

procedural requirement of service of summons must be satisfied." *Omni Capital Int'l,*

*Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). "Rule 12(b)(5) is the proper

provision to challenge the mode of delivery or the lack of delivery of the summons and

complaint." *Bellis v. Tokio Marine & Fire Ins. Co.*, No. 93 CIV. 6549, 2002 WL 193149,

at *15 (S.D.N.Y. Feb. 7, 2002) (internal quotation omitted). "[W]hen a defendant moves

to dismiss under rule 12(b)(5), the plaintiff bears the burden of proving adequate

service." *Burda Media, Inc. v. Viertel*, 417 F.3d 292. 298–99 (2d Cir. 2005).

"In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs

the content, issuance, and service of a summons." *DeLuca v. AccessIT Grp., Inc.*, 695

F. Supp. 2d 54, 64 (S.D.N.Y. 2010). Rule 4(m) provides, in relevant part:

> If a defendant is not served within 90 days after the
> complaint is filed, the court – on motion or on its own after
> notice to the plaintiff – must dismiss the action without
> prejudice against that defendant or order that service be
> made within a specified time. But if the plaintiff shows good

---

[5] While Defendants state that they move to dismiss pursuant to Federal Rule of Civil Procedure
12(b)(4) as well as 12(b)(5), their arguments relate solely to dismissal on the basis of 12(b)(5)
based on Plaintiff's failure to serve within 120 days of the filing of his original complaint. (Dkt.
No. 40-1 at 7-11). "Technically . . . a Rule 12(b)(4) motion is proper only to challenge
noncompliance with the provisions of Rule 4(b) . . .  that deal[ ] specifically with the content of
the summons. A Rule 12(b)(5) motion is the proper vehicle for challenging . . . the lack of
delivery of the summons and complaint." *Greene v. Wright*, 389 F.Supp.2d 416, 426 (D.Conn.
2005) (citing 5B Charles Allan Wright & Arthur R. Miller, Federal Practice and Procedure §
1353, at 334 (3d ed. 2004)).

cause for the failure, the court must extend the time for
service for an appropriate period.

Fed. R. Civ. Proc. 4(m).[6]

Defendants assert that as of August 16, 2016, over "3,650 days have passed
since this action was filed," in excess of the 120-day time limit to serve previously
imposed by Rule 4(m), and that "none of the proposed defendants have been served."
(Dkt. No. 40-1 at 7).

During the time period in which Plaintiff was appealing this Court's denial of IFP
status, from May, 2007, through March, 2015, Plaintiff's failure to serve Defendants
would be excused for "good cause" on the basis that Plaintiff was awaiting a
determination regarding his IFP status. In the Second Circuit, a *pro se* plaintiff shows
good cause for failure to effect service when that failure is attributable to a pending
decision on an IFP application. *E.g.*, *Gonzalez v. L'Oreal USA, Inc.*, 489 F. Supp. 2d
181, 184 (N.D.N.Y. 2007); *Kavazanjian v. Rice*, No. 03-CV-1923, 2005 WL 1377946, at
*2 (E.D.N.Y. June 6, 2005); *see also Ocasio v. Fashion Inst. of Tech.*, 9 Fed.Appx. 66,
68 (2d Cir. 2001) (summary order) (stating that the *pro se* plaintiff had 120 days to effect
service after the district court granted his motion to proceed IFP). Thus, Plaintiff was not
obligated to effect service until March 31, 2015. *See, e.g.*, *Romand v. Zimmerman*, 881
F. Supp. 806, 809 (N.D.N.Y. 1995) ("A complaint is not properly filed until after a
decision on whether to proceed *in forma pauperis* has been made.")

On that date, the Court (Hon. William M. Skretny) directed the Clerk of Court to
cause the United States Marshal to serve the Summons and Second Amended

---

[6] Rule 4(m) was amended, effective December 1, 2015, to reduce the maximum period of time
for service from 120 days to 90 days. *See* Fed. R. Civ. Proc. 4(m) advisory committee notes.
Under the version of Rule 4(m) that controlled at the time this action was filed, service was
required within 120 days.

Complaint upon the remaining defendants — P. Chappius, M. DeLauro, P. Jayne, M. Debugomaster, J. Squires, J. Litwiler, E. Delany, T. Morton, T. Hana, M. Miles, Ward, P. Corcoran, S. Wenderline, M. Bradt, L. Hale, Mr. Fitz, J. Whitford, W. Murray, J. Esgrow, D. Selsky, and R. Barnard. (Dkt. No. 23). On or about August 12, 2015, the Clerk of the Court forwarded to plaintiff a Notice, along with a number of blank Summonses and United States Marshals Service Receipt and Return of Process Forms (USM-285) ("Marshal Forms"), advising Plaintiff to complete the necessary number of Summonses and Marshal Forms for the remaining defendants and return them to the Clerk's Office so that the Marshals Service could serve the Summons and Second Amended Complaint on the remaining defendants. Instead, Plaintiff filed a number of motions and letters requesting various forms of relief. (Dkt. Nos. 24-28). Plaintiff claimed, among other things, that his legal documents pertaining to this action, including the Marshal Forms, were confiscated while he was incarcerated at Auburn CF. (Dkt. No. 25). In addition, the employment status of many of the defendants was, at that point, unknown, as the case had been filed nearly a decade earlier.

Due to the fact that this matter had been pending for a number of years, the Court, pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997), directed the New York State Attorney General's Office to advise the Court of the employment status and addresses of the remaining defendants so that they can be served with the Summons and Second Amended Complaint. (Dkt. Nos. 26). Although that information was requested within 45 days of the Decision and Order, dated November 30, 2015, the Attorney General's Office did not respond until directed by the Court a second time on May 10, 2016. (Dkt. No. 33).

By letter dated May 31, 2016, the Attorney General's Office advised that nine of the remaining defendants were still employed by DOCCS and provided the facilities at which they work and could be served. (Dkt. No. 34). The Attorney General's Office further advised that nine other defendants were no longer employed by DOCCS, and that the Summonses for those defendants and the Second Amended Complaint could be sent to DOCCS Counsel's Office, which would then forward the documents to the defendants at their last known addresses. *Id.*

Pursuant to the Court's Order dated June 17, 2016 (Dkt. No. 37), the Marshals Service was directed to serve the eighteen named defendants on June 20, 2016, and a Summons was issued two days later.

On August 16, 2016, Motions to Dismiss were filed (Dkt. No. 40, 41) on behalf of defendants Barnard, Bradt, Chappius, Corcoran, Deburgomaster, Delaney, Delauro, Esgrow, Hale, Hannah, Jayne, Litwiler, Miles, Morton, Murray, Selsky, Squires, Wenderlich, and Whiteford. In their moving papers, Defendants appear to acknowledge service in late June of 2016 (Dkt. No. 40-1 at 10), and in fact filed the instant Motions to Dismiss based on those pleadings. *See, e.g.*, *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 599 (E.D.N.Y. 2013). Defendants therefore had actual notice of the claims against them at least by late June, 2016, if not earlier when they responded to the Court's March 31, 2015, directive. Because the service requirements set forth by New York law regarding personal service by mail do not appear to have been properly completed, the Court directs Defendants to return the Acknowledgement of Receipt of Service by Mail Form within thirty (30) days of this Report and Recommendation. [7]

---

[7] *See* N.Y. Civ. Prac. L. & Rules. § 312-a ("As an alternative to the methods of personal service . . . a summons and complaint . . . may be served by the plaintiff or any other person by mailing

Defendants also state in their motion papers that they may elect to execute waivers of service in the event the Court denies the Motions to Dismiss. (Dkt. No. 40-1 at 7, n. 5). Should the Court not receive the Acknowledgement of Receipt of Service by Mail Form, Defendants shall have sixty (60) days of the date of this Report and Recommendation to advise whether the Attorney General will waive service.

As for defendants Fitz, Morton, and Ward, the Attorney General's Office advised that it could not identify Mr. Fitz as being employed by DOCCS; that an individual named John Morton is retired from the Southport CF, but that it could not determine whether he was who the plaintiff intended to name as a defendant; and that two different officers with the last name of Ward were employed at Southport CF at the time, but that it could not determine whether plaintiff intended to name either individual as a defendant. (Dkt. No. 34). Consequently, Plaintiff was directed by the Court to identify the proper defendants he intended to sue with respect to Fitz, Morton, and Ward. (Dkt. No. 37 at 2).

On August 24, 2016, Plaintiff filed a declaration identifying "T. Morton" as "John Morton," a retired DOCCS employee. (Dkt. No. 42). He did not identify the remaining two defendants. *Id.* The Marshals Service was subsequently directed to serve the Summons and Second Amended Complaint upon John Morton at the DOCCS Counsel's Office on August 29, 2016. (Dkt. No. 44).

Despite ample time and opportunity for Plaintiff to do so, he has not identified defendants Fitz and Ward, has not served them with the Second Amended Complaint or

---

to the person or entity to be served, by first class mail, postage prepaid, a copy of the summons and complaint . . .  together with two copies of a statement of service by mail and acknowledgement of receipt in the form set forth in subdivision (d) of this section, with a return envelope, postage prepaid, addressed to the sender."). The Court can provide the Acknowledgment Forms to Defendants if necessary.

process, and they have not been represented by any attorney in this matter. The Court recommends that those defendants be *sua sponte* dismissed based on Plaintiff's failure to prosecute those claims and/or failure to comply with a Court Order to take reasonable steps to identify those defendants pursuant to Fed. R. Civ. Proc. 41(b).

### C.    *Res Judicata*

In further support of their Motions to Dismiss, Defendants argue that certain of Plaintiff's claims are subject to dismissal under the doctrine of *res judicata*. (Dkt. No. 40-1 at 11-15, 17). As the claims and named defendants contained in the Second Amended Complaint have been further distilled in this Report and Recommendation, it is recommended that this ground for dismissal be denied without prejudice. *See supra* at 3 n.3. To that end, the Court will conclude its analysis with a summary of the remaining claims and defendants for the sake of clarity and continuity.[8]

### D.    Parties and Remaining Claims

The remaining defendants in the case are named as follows: Ralph Barnard ("Barnard"), Mark Bradt ("Bradt"), Paul Chappius ("Chappius"), Peter Corcoran ("Corcoran"), Mark Deburgomaster ("Deburgomaster"), Edmund Delaney ("Delaney"), Mark Delauro ("Delauro"), James Esgrow ("Esgrow"), Larry Hale ("Hale"), Thomas Hannah ("Hannah"), Paul Jayne ("Jayne") Jodi Litwiler ("Litwiler"), Mark Miles ("Miles"), John Morton ("Morton"), William Murray ("Murray"), Donald Selsky ("Selsky"), James Squires ("Squires"), Stephen Wenderlich ("Wenderlich"), John Whiteford ("Whiteford").

---

[8] As has been mentioned in previous Orders, Plaintiff's submissions are rambling and discursive, encompassing several years of events at various correctional facilities in New York State. The Second Amended Complaint is approximately 75 pages long. The Court will identify Plaintiff's claims as best as it can decipher them.

The Second Amended Complaint consists of two sections. The "First Claim" alleges that on July 17, 2006, Plaintiff was subjected to a brutal assault by a group of seven or eight DOCCS employees, including Chappius, Jayne, Debergomaster, Squires, Delaney, Hannah, and Morton. 2d Am. Compl. at 17-19, 21, 24, 25-26, 32-33. Specifically, Plaintiff claims that the Defendants placed him in hand, waist, and ankle restraints and struck his head repeatedly against a stone wall. While Plaintiff was on the ground, Defendants continued to deliver punches and blows to his head, back, kidneys, and liver, "piled on top of" Plaintiff, and impaired his breathing. The assault continued for more than 20 minutes. *Id.* at 17.

Plaintiff further contends as part of the First Claim that defendants Delaro and Litwiler failed to provide Plaintiff proper medical attention after the July 17, 2006, assault, which resulted in extreme pain and a litany of injuries. 2nd Am. Compl. at 17, 20, 29. Additionally, Delaro and Litwiler allegedly ignored other serious medical conditions. He states that defendant Litwiler withheld medically-issued men's briefs following a groin injury on July 3, 2007, and that Delauro refused to treat an eye infection caused extreme swelling and redness. *Id.* at 20, 29.

The First Claim also alleges that on September 15, 2006, defendant Corcoran presided over a Tier III disciplinary hearing at Southport CF and denied Plaintiff due process when Corcoran "fail[ed] to produce printed material evidence," against Plaintiff, refused to allow Plaintiff to be present for the conclusion of the hearing, and "reluctantly" allowed Plaintiff assistant access, the result of which was an additional 4 months of placement in the Special Housing Unit ("SHU"). 2d Am. Compl. at 36-37.

The "Second Amended Claim" of the Second Amended Complaint consists of a number of unrelated claims against various defendants at three different facilities (Elmira, Attica, and Southport).   The Second Claim, subtitled "Imminent Danger," alleges that on November 9, 2009, at Elmira CF, defendants Wendersline and Bradt were deliberately indifferent in ignoring Plaintiff's written requests to be relocated to another housing block, resulting in a 5-inch long cut to his face, presumably caused by a rival inmate. 2d Am. Compl. at 46.

On March 18, 2011, while incarcerated at Attica CF, defendant Hale allegedly retaliated against Plaintiff for filing grievances against him by issuing "tickets," denied food trays for a period of two weeks, and withheld Plaintiff's inmate mail. 2d Am. Compl. at 49.

He next contends that defendant Whiteford, sometime in October of 2010, at Attica, engaged in "ticket retaliation," erased Plaintiff's conditional release date, denied Plaintiff access to religious services, special events, mess hall, and the yard. 2d Am. Compl. at 53.

Plaintiff also alleges that sometime in December of 2011 at Attica CF, defendant Murray conducted a disciplinary hearing stemming from a "ticket retaliation," failed to present evidence used against Plaintiff, and, in retaliation for various grievances filed by Plaintiff, caused Plaintiff's legal documents to be burned inside his cell. 2d Am. Compl. at 62.

Defendant Escrow is alleged to have conducted two Tier III disciplinary hearings against Plaintiff in violation of his due process rights at Southport in 2006 and at Elmira

in 2009. Specifically, Plaintiff claims that Escrow denied Plaintiff's right to call witnesses. 2d Am. Compl. at 65.

On June 19 and 20, 2006, defendant Selsky is alleged to have affirmed the "biased hearing disposition against Plaintiff," wherein Plaintiff was denied assistance, did not have time to prepare a defense, and was not allowed to present evidence in his defense. 2d Am. Compl. at 66. Plaintiff does not readily identify the facility where this conduct allegedly occurred.

Finally, defendant Barnard allegedly denied Plaintiff access to the infirmiry after the July 17, 2006 attack at Southport, and deprived him of necessary emergency medical care. He further denied Plaintiff outside hospital access and a brain scan for a head injury. Plaintiff claims that Barnard also refused to order x-rays for a knee injury, denied Plaintiff groin support men's briefs, and took away Plaintiff's prescription medications and immune system supplements on July 3, 2006. 2d Am. Compl. at 67.

The Court will next briefly address Plaintiff's pending motions. (Dkt. Nos. 36, 38, 43, 48).

### E.    Plaintiff's Pending Motions

#### 1.    Injunctive Relief

Plaintiff's Motion for Emergency Injunctive Relief / TRO dated June 8, 2016 does not request any specific relief, but appears to challenge the Court's previous denials of similar or identical requests for relief made by Plaintiff. (Dkt. No. 36 at 2). It does indicate that, at the time of filing, he had been moved back to Southport CF where "a dozen wicked racist white supremacist" officers assaulted him ten years earlier. (Dkt. No. 36 at 2). To the extent Plaintiff's motion can be read as seeking relocation to

another facility, the Court recommends that his request be denied as moot since he is currently incarcerated in Great Meadow CF and no longer housed at Southport, according to the DOCCS inmate locator service.[9] *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2011) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *see also Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.") (*per curiam*); *Young v. Coughlin*, 866 F.2d 567, 568 n.1 (2d Cir. 1989) ("Since Young is no longer incarcerated at Auburn, but was transferred to Attica, his claim for declaratory and injunctive relief is moot.").

Plaintiff's next Emergency Injunctive Relief / TRO motion asserts a challenge the conditions of his confinement at Great Meadow, where he complains of unsanitary conditions, unspecified "staff abuse," and various instances of retaliation. (Dkt. No. 48 at 2-6). Plaintiff again requests transfer to a different facility. *Id.* at 2.

"In order to obtain a TRO, plaintiff[ ] must show: (1) that absent such an order, [he is] likely to suffer irreparable harm; and (2) either a likelihood of success on the merits or 'sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the [plaintiff's] favor.'" *Xelus, Inc. v. Servigistics, Inc.*, 371 F. Supp. 2d 387, 389 (W.D.N.Y. 2005) (quoting *In re Feit & Drexler, Inc. v. Drexler*, 760 F.2d 406, 416 (2d Cir. 1985)).

Plaintiff has not established a likelihood of success on the merits of his claims or sufficiently serious questions going to the merits because his motion does not address, much less relate to, the underlying claims in his Second Amended Complaint, as

---

[9] *See* http://nysdoccslookup.doccs.ny.gov/ (last accessed December 13, 2016).

summarized above. It is therefore recommended that Plaintiff's motion be denied. *See Allen v. Brown*, No. 96-CV-1599, 1998 WL 214418, at *4 (N.D.N.Y. Apr. 28, 1998) (denying the plaintiff's application for injunctive relief because the allegations in his application were unrelated to the claims in his complaint and, therefore, the plaintiff "failed to establish either a likelihood of succeeding on the merits of his underlying claim, or sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward" the plaintiff); *Abdul-Jabbar v. West*, No. 05-CV-373, 2009 WL 2762270, at *9 (W.D.N.Y. Aug. 26, 2009) (same).

### 2.   Appointment of Counsel

Plaintiff has also requested that the Court appoint him counsel because his claim involves excessive force, his appellate counsel allegedly "expressed serious interest" in representing him in the present matter, and because the previous Magistrate Judge assigned to this case was a co-conspirator of certain of the named defendants and sought to "railroad" Plaintiff.[10] (Dkt. No. 38 at 1 & Attach. pp. 1-7). A subsequent motion filed approximately two months later re-requesting counsel asserts that the complaint is meritorious, and that Plaintiff is a layperson to the judicial system with a tenth-grade education and as such is incapable of proceeding *pro se*. (Dkt. No 43 at 1-2).

A number of factors must be carefully considered by the court in ruling upon a motion to appoint counsel, including "(1) whether the party's claim has substantial merit; (2) whether the nature of the factual issues requires an investigation, and whether the party's ability to investigate is inhibited; (3) whether the claim's factual issues turn on

---

[10] Plaintiff also repeatedly refers to the defendants and Judges involved in this action as Klan members, guilty of genocide, and has accused the Court on numerous occasions of corruption and being a party to a widespread conspiracy with DOCCS. Plaintiff is reminded, again, that his continued inflammatory rhetoric is unhelpful and will not be tolerated.

credibility, which benefits from the skills of those trained in presentation of evidence and cross-examination; (4) the party's overall ability to present its case; and (5) whether the legal issues presented are complex." *Garcia v. USICE (Dep't of Homeland Sec.)*, 669 F.3d 91, 98–99 (2d Cir. 2011).

Even if the Court were to assume, for purposes of this motion, that Plaintiff's position seems likely to be of substance, the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example: (1) the case does not present novel or complex issues; and (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action, as evidenced by his extensive history with the courts. The Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination at this stage of litigation. To the contrary, the contentions in his Motions to Appoint Counsel are either conclusory, disingenuous, incendiary, or a combination thereof.

For these reasons, it is recommended that Plaintiff's motion for the appointment of counsel is denied without prejudice. After the parties have undertaken discovery and/or substantive dispositive motions are filed, Plaintiff may file another motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. It is Plaintiff's responsibility to retain an attorney or press forward with this lawsuit *pro se*. *See* 28 U.S.C. § 1654; *see also Phillips v. Goord*, No. 08-CV-0957, 2009 WL 909593, at *1, n.3 (W.D.N.Y. April 1, 2009).

## IV.    Conclusion

Plaintiff was previously advised to file a notice identifying "Fitz" and "Ward" by name and failed to do so. It is recommended that the claims against these unnamed defendants should therefore be DISMISSED pursuant to Fed.R.Civ.P. 4(m). The case will proceed only as to the claims against defendants Barnard, Bradt, Chappius, Corcoran, Deburgomaster, Delaney, Delauro, Esgrow, Hale, Hannah, Jayne, Litwiler, Miles, Morton, Murray, Selsky, Squires, Wenderlich, and Whiteford.

Further, it is recommended that Defendants' Motions to Dismiss (Dkt. Nos. 40, 41) be DENIED; Plaintiff's Motions for Temporary Restraining Orders (Dkt. Nos. 36, 48) be DENIED; and Plaintiff's Motions to Appoint Counsel (Dkt. Nos. 38, 43) be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. Proc. 72(b) and Local Rule 72(b).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988.

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to Petitioner and Respondent.

**IT IS SO ORDERED.**

/s/ *Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge

Dated: January 3, 2017
        Buffalo, New York