UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GEORGE CHAVIS,

                    Plaintiff,

        v.                                    **DECISION AND ORDER**
                                              06-CV-543S
PAUL CHAPPIUS, ET AL.,

                    Defendants.

# I. INTRODUCTION

In this action, George Chavis, a long-time prisoner in the custody of the New York

Department of Corrections and Community Services ("DOCCS"), asserts a number of civil

rights claims pro se under 42 U.S.C. § 1983 against a multitude of DOCCS employees

and officials.   By order filed March 30, 2018, this Court accepted in part and set aside in

part the Report and Recommendation of the Honorable Michael J. Roemer, United States

Magistrate Judge, who principally recommended that the defendants' motion to dismiss

Chavis's second amended complaint be denied.   (Docket Nos. 40, 49, 64.)   This Court

granted the defendants' objections to the Report and Recommendation, granted their

motion to dismiss, and dismissed Chavis's second amended complaint.   (Docket No. 64.)

It also denied Chavis's objections.   (Id.)   This Court further indicated that a decision

explaining the basis for its order would follow.   (Id.)   This is that decision.

# II. BACKGROUND

**A.      Procedural History**

This case has a long and tortured history.

Chavis initially filed his complaint together with a motion to proceed *in forma*

1

*pauperis* more than a decade ago, on August 16, 2006. (Docket No. 1.) On October 24, 2006, the Honorable John T. Elfvin, United States District Judge, denied Chavis's motion to proceed *in forma pauperis* on the basis that Chavis had received more than three "strikes" under the Prison Litigation Reform Act ("PLRA") and had not sufficiently demonstrated that he was in imminent danger of serious physical injury such that his case could proceed despite the three-strike bar in 28 U.S.C. § 1915 (g). (Docket No. 4.) Judge Elfvin therefore ordered that Chavis's complaint be dismissed, unless he paid the full filing fee by November 28, 2006. (Id.)

But instead of paying the filing fee, Chavis filed a motion to amend his complaint and an "Order to Show Cause for Preliminary Injunction and TRO Order." (Docket Nos. 5, 6.) On May 11, 2007, the Honorable Charles J. Siragusa, United States District Judge, construed Chavis's motion to amend as a motion for reconsideration and then promptly denied both that motion and Chavis's motion for injunctive relief. (Docket No. 7.) Judge Siragusa also dismissed Chavis's complaint for failure to pay the required filing fee. (Docket No. 7.)

Chavis appealed Judge Siragusa's decision to the United States Court of Appeals for the Second Circuit, which, on August 17, 2010, reversed the denial of Chavis's motion to amend as an abuse of discretion and strongly suggested that the allegations in Chavis's submissions satisfied the imminent danger standard in § 1915 (g) such that Chavis should be permitted to proceed *in forma pauperis*. See Chavis v. Chappius, 618 F.3d 162 (2d Cir. 2010). The Second Circuit therefore remanded with instructions to allow Chavis to amend his complaint. Id. at 171.

Upon remand, the Honorable H. Kenneth Schroeder, Jr., United States Magistrate Judge, directed Chavis to file an amended complaint, which Chavis filed on October 31, 2011.  (Docket Nos. 15, 18.)   Chavis's amended complaint, however, did not completely replace his initial complaint, as required.   See Arce v. Walker, 139 F.3d 329, 332 n. 4 (2d Cir. 1998) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.") (quoting Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977)); see also Local Rule 15 (a) of the Local Rules of Civil Procedure for the Western District of New York (providing that "[n]o portion of the prior pleading shall be incorporated into the proposed amended pleading by reference").   Judge Schroeder therefore dismissed Chavis's amended complaint and granted him leave to file a second amended complaint to include all of his allegations and claims against all defendants. (Docket No. 19.)

Chavis filed his second amended complaint on July 26, 2012, using this district's Prisoner Complaint Form.   (Docket No. 20.)   He largely ignored the section of the form seeking information about other lawsuits involving the same facts, other than to answer "too many pre-maturely [sic] dismissed I could not prepare an appeal brief due to judicial corruption here!."   (SAC, Docket No. 20, pp. 2, 14.)   In addition, when asked on the form whether he had begun any other lawsuits in federal court relating to his imprisonment, Chavis listed only "'this one pending now," referring to the present case (06-CV-543S).[1]

---

[1] In his initial complaint, Chavis listed one previous case involving the same facts (Chavis v. VonHagan, 02-CV-119 HKS) and one previous federal case concerning his incarceration (Chavis v. Goord, 00-CV-97 HKS).   (Docket No. 1, pp. 3, 12.)

(Id. at p. 14.)

On March 31, 2015, this Court screened Chavis's second amended complaint pursuant to § 1915 (e)(2)(B) and § 1915A, and reviewed it to determine whether Chavis established "imminent danger of serious physical injury" such that he could proceed *in forma pauperis*, as the Second Circuit suggested. (Docket No. 23.) In a 39-page decision, this Court found that Chavis alleged sufficient facts to meet the imminent danger standard in § 1915 (g) and screened out a number of claims and defendants.[2] (Id.) And because this Court granted Chavis permission to proceed *in forma pauperis*, it directed the United States Marshals Service to serve the second amended complaint on the remaining defendants. (Id.)

On November 30, 2015, to facilitate effectuating service, Judge Schroeder directed the New York State Attorney General's office to provide contact information for the defendants, consistent with Valentin v. Dinkins, 121 F.3d 72, 75 (2d Cir. 1997). (Docket No. 26.) After initially failing to respond to that order (Docket No. 33), the Attorney General filed its Valentin response on June 7, 2016 (Docket No. 34). Thereafter, on June 20, 2016, Judge Roemer directed service consistent with the Valentin response and directed the defendants to answer the second amended complaint.[3] (Docket No. 37.)

On August 16, 2016, the defendants filed a motion to dismiss Chavis's second amended complaint under Rules 11 and 12 of the Federal Rules of Civil Procedure.

_____

2 This Court dismissed a number of Chavis's claims without prejudice and granted him leave to move to file a third amended complaint if he wished to further pursue one or more of those claims. (Docket No. 23.) Chavis did not, however, move to file a third amended complaint.

3 Judge Roemer directed further service on "John Morton" on August 29, 2016, after Chavis identified him as the defendant formerly identified as "T. Morton." (Docket No. 44.)

(Docket No. 40.)   In particular, the defendants sought dismissal under Rule 12 (b)(5) for insufficient service of process, under Rule 12 (b)(6) for failure to state a claim upon which relief can be granted, and under Rule 11 and this Court's inherent authority due to Chavis's "vituperative conduct" and his inclusion of false information in his pleadings. (Docket No. 40.)   The parties fully briefed the defendants' motion before Judge Roemer, who reserved decision without oral argument.   (Docket No. 40, 45, 47.)

On January 4, 2017, Judge Roemer issued a Report and Recommendation that addressed a number of motions, including the defendants' motion to dismiss.   (Docket No. 49.)   As it pertains to the motion to dismiss, Judge Roemer recommended that it principally be denied.   (Id.)   In particular, Judge Roemer recommended that this Court find that Chavis established good cause for not serving the defendants within the prescribed period (that being the appeal of the court's initial *in forma pauperis* determination); that the defendants had actual notice of Chavis's second amended complaint and should be compelled to return their acknowledgement forms; that the defendants' preclusion arguments should be denied without prejudice; and that the defendants' Rule 11 arguments should be denied.   (Docket No. 49.)   Judge Roemer also recommended that two of the defendants (Fitz and Ward) be dismissed due to Chavis's failure to properly identify them.   (Id.)

Both parties filed objections to the Report and Recommendation, which were fully briefed by February 15, 2017.   (Docket Nos. 50, 52, 54.)   Thereafter, this Court accepted the Report and Recommendation over objection as it pertained to the other motions addressed therein, but reserved decision on the defendants' objections as it

related to the defendants' motion to dismiss. (Docket No. 57.) Subsequently, as noted above, this Court accepted the Report and Recommendation in part and set it aside in part as it related to the motion to dismiss,[4] granted the defendant's objections, denied Chavis's objections, and dismissed the second amended complaint, with decision to follow. (Docket No. 64.)

## B.    Chavis's Remaining Claims

Chavis's claims are difficult to navigate. His handwritten, 75-page second amended complaint contains a litany of disconnected allegations, complaints, and accusations. After screening, the events underlying the remaining largely disjointed claims span more than six years and three correctional facilities. In its initial screening order, this Court identified those claims that required dismissal, but did not specifically identify the remaining claims. (Docket No. 23.) In his Report and Recommendation, Judge Roemer identified the remaining defendants and generally identified the remaining claims. (Docket No. 49, pp. 10-13.) Building on those two decisions, and having reviewed the second amended complaint in detail, this Court identifies the remaining claims as follows below.[5]

### 1.    Claims Arising Out of the Southport Correctional Facility

Scattered within Chavis's second amended complaint are nine claims arising out

_____

4 This Court accepted that portion of the Report and Recommendation that recommended the dismissal of Defendants Fitz and Ward and set aside that portion that recommended denial of the defendants' motion to dismiss. (Docket No. 64.)

5 Although Chavis divides his second amended complaint into a "first claim" and "second claim," his diffuse presentation defeats this attempt at organization. Instead, Chavis's claims are better organized by facility, a method this Court employs herein.

of the Southport Correctional Facility.

First, Chavis alleges that on August 12, 2005, Defendant P. Jayne refused to provide him state-issued winter clothing, which resulted in Chavis receiving no outdoor recreation for one year while he was in the SHU. (SAC, Docket No. 20-1, p. 8.)

Second, Chavis alleges that Defendant D. Selsky violated his due process rights in November or December 2005 (and again on June 19-20, 2006) by affirming hearing officers' rulings in Tier 3 hearings where Chavis was unsuccessful. (SAC, Docket No. 20-4, p. 6.)

Third, Chavis alleges that on May 7, 2006, Defendant P. Jayne illegally confiscated his property in retaliation for Chavis filing numerous grievances against him. (SAC, Docket No. 20-1, p. 8.) He further alleges that on this same date, Defendant J. Litwiler delayed sending him four of his "actively pending case property draft bags," in an effort to cause him to miss a filing deadline in litigation he had pending in federal court. (Id. at p. 14.) Chavis also alleges that on this same date, Defendant M. Miles "stripped" him of and apparently discarded his legal documents, legal books, religious materials, and "medical supporters." (Id. at p. 15.)

Fourth, Chavis alleges that on July 3-4, 2006, Defendant J. Litwiler took away his medically-issued men's briefs, which aggravated a groin injury that he had since 2004. (Id. at pp. 14-15.)

Fifth, as set forth in the margin, Chavis alleges that a number of the defendants attacked him—or failed to stop the attack—in the Draft Room on July 17, 2006.[6] (SAC,

---

6    On July 17, 2006, several of the defendants allegedly issued Chavis a "late property callout, only

7

Docket No. 20-1, pp. 2, 3, 12; SAC, Docket No. 20-2, pp. 2, 3.) Chavis claims to have

"suffered punches by closed fists to [his] back kidney/liver area leading to serious trauma

over a period of several years." (SAC, Docket No. 20-1, p. 2.) Chavis alleges that this

incident left him bloodied and unable to breathe, yet he was denied access to medical

care. (Id. at p. 2; SAC, Docket No. 20-4, p. 7.) He further alleges that the defendants

fabricated a misbehavior report against him to cover up this assault and then denied him

---

to place [Chavis] under full mechanical restraints." (SAC, Docket No. 20-1, p. 2.) The restraints allegedly included "handcuffs, waist chain and ankle slave shackles" applied "extremely tight[ly]." (Id. at p. 2.) Defendant P. Jayne allegedly escorted Chavis to the Draft Room in handcuffs that he applied "tightly" after Defendant J. Squires had summoned Chavis from the B-Block housing area. (Id. at pp. 9-10.)

At some point after Chavis arrived, Defendant E. Delaney allegedly ordered Chavis to vacate the Draft Room. (Id. at p. 11.) Chavis failed to obey this order because he believed that his family photos and legal documents would be confiscated when he left. (Id.) He therefore requested to speak to the Draft Room sergeant, a request that Defendants E. Delaney, P. Jayne, and M. Deburgomaster allegedly ignored. (Id. at pp. 11-12.) Defendant E. Delaney then allegedly approached Chavis and placed him in a bear hug, even though Chavis was already in "mechanical restraints." (Id. at pp. 11-12.) At that point, Defendant Jayne pulled the "riot pin alarm," which resulted in five or six additional officers responding to the Draft Room. (Id. at pp. 11-12.)

From there, an attack allegedly ensued. Chavis claims to have "suffered punches by closed fists to [his] back kidney/liver area leading to serious trauma over a period of several years." (Id. at p. 2.) He further alleges that during the attack, Defendant J. Squires repeatedly smashed his forehead into the stone Draft Room wall. (Id. at pp. 2, 6, 10.) He also alleges that Defendants P. Jayne and M. Deburgomaster "applied ankle shackles to my ankles" and that Jayne delivered 10 or 12 "hard fist punches to my lower back-kidney/liver area while [I was] laying on the dirty Draft Room floor facedown." (Id. at pp. 2, 6, 9.) At some point during the attack, the involved defendants allegedly "pil[ed] on top of [Chavis's] body to impair [his] breathing." (Id. at p. 2.) The attack allegedly lasted 30 to 45 minutes and left Chavis bloodied and unable to breathe. (Id. at pp. 2, 11.)

In addition to claims against the alleged attackers, Chavis alleges that the Draft Room sergeant, Defendant James Morton, failed to stop the attack. (SAC, Docket No. 20-1, pp. 3, 12; SAC, Docket No. 20-2, p. 2.) He further alleges that Defendant T. Hana was present for the attack and presumably did not intervene. (SAC, Docket No. 20-2, p. 3.) He also alleges that Defendant M. DeLauro of the medical staff was summoned to the Draft Room, but instead of providing treatment, fabricated a "no injury" examination to cover up the alleged assault. (SAC, Docket No. 20-1, pp. 2, 5.) Chavis further alleges that Defendant R. Barnard denied him access to the medical infirmary and failed to refer him for hospital examination. (SAC, Docket No. 20-4, p. 7.) Chavis also contends that R. Barnard was deliberately indifferent to his medical needs when he stripped him of his medication and refused to allow him access to men's support briefs just before the July 2006 assault. (Id.) Chavis further alleges that Defendant J. Esgrow violated his due process rights during the course of the Tier 3 hearing related to the July 7, 2006 incident by denying him the opportunity to call witnesses. (Id. at p. 5.)

his due process rights during his Tier 3 hearing. (SAC, Docket No. 20-1, pp. 2, 5; SAC, Docket No. 20-4, p. 5.)

Sixth, Chavis alleges that from September 4-6, 2006, Defendant P. Chappius participated in a conspiracy to file false misbehavior reports against him to cause his cell relocation and change in status from SHU-Level 2 status to SHU-Level 1 status. (SAC, Docket No. 20-1, pp. 3-4.) Chavis alleges that on September 4, 2006, Defendant P. Chappius "ordered repeated officer cell searches on me while in SHU-housing, that resulted in four to five harassment searches." (Id. at p. 3.) In conjunction with these searches, Defendant P. Carpenter allegedly threatened to and allegedly did fabricate a "contraband ticket" in retaliation for Chavis having filed grievances against Chappius, which resulted in Chavis's relocation.[7] (SAC, Docket No. 20-1, p. 3; SAC, Docket No. 20-2, p. 4.) Chavis also alleges that during this relocation and as part of this conspiracy, Defendant Wetzel placed him in full mechanical restraints due to his "bad intentions" and bumped his head against a wall.[8] (SAC, Docket No. 20-1, p. 3; SAC, Docket No. 20-2, pp. 4-5.) After Chavis was relocated, Defendant Ward allegedly denied him food for three days, refused to let him shower for several weeks, failed to provide "cell cleanup," and denied him mail. (SAC, Docket No. 20-1, p. 4; SAC, Docket No. 20-2, pp. 5-6.)

Seventh, Chavis alleges that on September 15, 2006, Defendant P. Corcoran violated his due process rights during a Tier 3 hearing concerning the "contraband ticket" written by Defendant P. Carpenter several days earlier. (SAC, Docket No. 20-2, pp. 6-

---

7 This claim has been dismissed as to Defendant P. Carpenter. (See Docket No. 23, p. 12.)

8 This claim has been dismissed as to Defendant Wetzel. (See Docket No. 23, p. 14.)

7.)

Eighth, Chavis alleges that on July 17, 2007, Defendants P. Jayne and J. Litwiler stole and destroyed seven of his property bags after his transfer from the Southport Correctional Facility to the Elmira Correctional Facility on or about May 18 or June 18, 2007. (SAC, Docket No. 20-1, pp. 8, 12, 13.) This was allegedly done in retaliation for Chavis filing grievances. (Id. at p. 13.)

And finally, Chavis alleges that in 2010 (after he returned to Southport from Elmira), Defendants M. Deburgomaster and J. Squires intimidated and verbally threatened him by visiting him in his SHU cell. (Id. at p. 9.)

## 2. Claims Arising Out of the Elmira Correctional Facility

Chavis asserts two claims arising out of the Elmira Correctional Facility. He alleges that on November 9, 2009, he suffered a 5-inch long, ¼-inch deep cut on his face inflicted by a fellow inmate after Defendants S. Wenderline and M. Bradt refused his written requests to relocate him to another housing block, presumably to avoid the inmate who harmed him. (SAC, Docket No. 20-3, pp. 1-2; SAC, Docket No. 20-3, p. 10.) Chavis further alleges that Defendant J. Esgrow violated his due process rights during the course of the related Tier 3 hearing by denying him the opportunity to call expert witnesses. (SAC, Docket No. 20-4, p. 5.)

## 3. Claims Arising Out of the Attica Correctional Facility

Chavis asserts four claims arising out of his incarceration at the Attica Correctional Facility.

First, Chavis alleges that in October 2010, Defendant J. Whiteford engaged in

10

"ticket retaliation." (SAC, Docket No. 20-3, p. 8.) Chavis further claims that Whiteford "erased" his conditional discharge date and participated in a conspiracy with other defendants to limit his access to programs at Attica. (Id.)

Second, Chavis alleges that sometime in 2011, Defendant W. Murray violated his due process rights during a Tier 3 hearing by failing to consider certain evidence that he offered. (SAC, Docket No. 20-4, pp. 1-2.) Chavis also alleges that Murray conspired with Defendants Chappius and Fitz to burn his legal papers and relocate him. (Id. at p. 2.)

Third, Chavis alleges that on March 18, 2011, Defendant L. Hale "ticketed" him in retaliation for filing grievances. (SAC, Docket No. 20-3, p. 4.) He also alleges that Hale refused to release him from his cell on March 18, 2011, and was "reluctant" to release him from his cell on April 17, 2011. (SAC, Docket No. 20-3, p. 4.) He further alleges that Hale and Defendant Fitz verbally threatened him, harassed him, refused to release him from his cell, flooded his cell, and denied him food over a period of two weeks. (SAC, Docket No. 20-3, p. 4.)

Fourth, Chavis alleges that on April 20, 2011, Defendants P. Chappius and Fitz burned his legal papers in his cell. (SAC, Docket No. 20-1, p. 4; SAC, Docket No. 20-3, p. 5.) Chavis includes photographs in the second amended complaint that he maintains depict his burned papers, though the photographs are not very clear. (SAC, Docket No. 20-3, pp. 6-7.)

### III. DISCUSSION

Cognizant of the distinct disadvantage that pro se litigants face, federal courts

routinely read their submissions liberally and interpret them to raise the strongest arguments that they suggest.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).   Since Chavis is proceeding pro se, this Court has considered his submissions and arguments accordingly.

The defendants move to dismiss Chavis's Southport and Elmira claims for failure to state a claim upon which relief can be granted on the basis that they are precluded by the doctrine of res judicata.   They also seek dismissal of all claims for insufficient service of process and as a sanction under Rule 11 and this Court's inherent authority.[9]   Chavis opposes each of the defendants' grounds for dismissal.

## A.    Failure to State a Claim

### 1.    Rule 12 (b)(6)

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12 (b)(6).   Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.   Fed. R. Civ. P. 8 (a)(2).   But the plain statement must "possess enough heft to show that the pleader is entitled to relief."   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the

---

9 In addition, Chavis's second amended complaint continues to be subject to § 1915 screening.   See 28 U.S.C. § 1915 (e)(2) (providing that the court must dismiss a case "at any time" if any of the provisions in § 1915 (e)(2)(A) and (B) are met).

plaintiff's favor.  ATSI Commc'ns, 493 F.3d at 98.  Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)  ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged.  Iqbal, 556 U.S. at 678.  The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief.  Id. at 1950; Fed. R. Civ. P. 8 (a)(2).  Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits."  Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  This examination is context specific and requires that the court draw on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.  First, statements that are not entitled to the presumption of truth, such as conclusory allegations, labels, and legal conclusions, are identified and stripped away.  See id.  Second, well-pleaded, non-conclusory factual

allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

### 2. 42 U.S.C. § 1983

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. To properly plead a cause of action under § 1983, a plaintiff's complaint must include allegations that the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Whalen v. County of Fulton, 126 F.3d 400, 405 (2d Cir. 1997); Hubbard v. J.C. Penney Dep't Store, 05-CV-6042, 2005 WL 1490304, at *1 (W.D.N.Y. June 14, 2005).

Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983. See Haygood v. City of New York, 64 F. Supp. 2d 275, 280 (S.D.N.Y. 1999). It is well settled in this circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983. See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F. Supp. 2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz, No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000).

The Second Circuit construes personal involvement in this context to mean "direct

participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Personal involvement need not be active participation. It can be found "when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act." See Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989). Thus, personal involvement can be established by showing that

> (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that constitutional acts were occurring.

Liner v. Goord, 582 F. Supp. 2d 431, 433 (W.D.N.Y. 2008) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003).

### 3. Chavis's Claims

#### a. Precluded Claims

Chavis is a litigious inmate. He has filed numerous actions throughout the state and federal courts in New York, including ten alone in this district. His complaints are typified by vitriol and acrimony, with one court characterizing Chavis as having an

"incorrigible propensity for abusing the litigation process." Chavis v. Curlee, No. 9:06-CV-0049 (LEK/GHL), 2008 WL 508694, at *11 (N.D.N.Y. Feb. 21, 2008). This penchant has resulted in Chavis filing repeated actions against numerous defendants concerning the same events, which gives rise to preclusion arguments under the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion). Application of these doctrines serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411, 415, 66 L. Ed. 2d 308 (1980).

> Claim preclusion and issue preclusion are "related but distinct" concepts. In re Indu Craft Inc., No. 11-CV-5996 (JMF), 2012 WL 3070387, at *10 (S.D.N.Y. July 27, 2012) (quoting Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002)). Claim preclusion "bars the relitigation ... of claims that were, or could have been, brought in an earlier litigation between the same parties or their privies." Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 919 (2d Cir. 2010); see also In re Old Carco LLC, No. 14-CV-2225 (JMF), 2014 WL 6790781, at *2 (S.D.N.Y. Dec. 1, 2014). Issue preclusion bars relitigation where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Wyly v. Weiss, 697 F.3d 131, 141 (2d Cir. 2012) (alteration in original).

DW Last Call Onshore, LLC v. Fun Eats & Drinks LLC, No. 17-CV-962 (JMF), 2018 WL 1470591, at *4 (S.D.N.Y. Mar. 23, 2018).

To determine whether res judicata applies, courts consider "(i) whether the previous action involved an adjudication on the merits; (ii) whether the previous action

involved the same parties or those in privity with them; and (iii) whether the claims asserted in the subsequent action were, or could have been, raised in the prior action." Burton v. Niagara Frontier Transp. Auth., No. 11-CV-971, 2013 WL 3423754, at *2 (W.D.N.Y. July 8, 2013) (citing Bey v. City of New York, No. 99 Civ. 3873 (LMM)(RLE), 2010 WL 3910231, at *7 (S.D.N.Y. Sept. 21, 2010)).

The defendants argue that the majority of Chavis's claims arising from Southport and Elmira are barred by res judicata. Citing three actions that Chavis brought in this district—Chavis v. Elliott, 07-CV-600 ("Elliott"); Chavis v. VonHagan, 07-CV-653 ("VonHagan"); Chavis v. Muhammad, 10-CV-391 ("Muhammad")—they argue that the bulk of Chavis's claims have already been resolved on the merits. Each of the three cited actions ended in Chavis's complaints being dismissed because he failed to comply with court orders requiring him to pay the required filing fee. Such adjudications are on the merits. See Fed. R. Civ. P. 41 (b) (providing that involuntary dismissal for failure to prosecute or comply with a court order operates as an adjudication on the merits).

The next questions in the res judicata analysis are whether the resolved actions involved the same defendants (or those in privity) and whether the present claims were or could have been asserted in the resolved actions. To answer these questions, this Court has conducted an in-depth review of each of the voluminous complaints filed in the three cited actions. Based on that review, this Court finds that many of the claims, as set forth below, were filed against the same defendants and involved the same claims as asserted herein.

As it relates to the Southport claims, this Court first finds that Chavis's claim against

Defendant D. Selsky for violation of his due process rights was raised against him in Elliott. (Compare SAC, Docket No. 20-4, p. 6 with Elliott, Docket No. 1, pp. 37-38.) Similarly, Chavis's claims against Defendant P. Jayne and J. Litwiler concerning the confiscation, delay, and destruction of his property bags were raised against them in VonHagan. (Compare SAC, Docket No. 20-1, pp. 8, 14 with VonHagan, Docket No. 1, pp. 12-16.)

In addition, many of Chavis's claims arising out of the July 17, 2006 attack were raised in Elliott and VonHagan. This includes the claims against Defendant P. Jayne (compare SAC, Docket No. 20-1, pp. 2, 6, 9-10, 11-12 with Elliott, Docket No. 1, pp. 26-27 and VonHagan, Docket No. 1, pp. 13-14); the claims against Defendant J. Squires (compare SAC, Docket No. 20-1, pp. 2, 6, 9-10 with Elliott, Docket No. 1, pp. 38-39); the claims against Defendant E. Delaney (compare SAC, Docket No. 20-1, p. 2 with Elliott, Docket No. 1, pp. 28-29); the claims against Defendant M. Deburgomaster (compare SAC, Docket No. 20-1, pp. 2, 6, 9, 11-12 with Elliott, Docket No. 1, pp. 27-28 and VonHagan, Docket No. 1, p. 14); the claims against Defendant J. Morton (compare SAC, Docket No. 20-1, pp. 3, 12; SAC, Docket No. 20-2, p. 2 with Elliott, Docket No. 1, pp. 41-42); the claims against Defendant T. Hana (compare SAC, Docket No. 20-2, p. 3 with Elliott, Docket No. 1, pp. 42-43); the claims against Defendant M. DeLauro (compare SAC, Docket No. 20-1, pp. 2, 5 with Elliott, Docket No. 1, pp. 13, 24); and the claims against Defendant J. Esgrow (compare SAC, Docket No. 20-4, p. 5 with Elliott, Docket No. 1, pp. 39-40).

Chavis's remaining Southport claims were also raised in Elliott, VonHagan, or

Muhammad. Chavis's denial-of-food claim against Defendant Ward was raised against him in both Elliott and VonHagan.[10] (Compare SAC, Docket No. 20-1, p. 4; SAC, Docket No. 20-2, pp. 5-6 with Elliott, Docket No. 1, pp. 45-46 and VonHagan, Docket No. 1, p. 17.) Chavis's due process claim against Defendant P. Corcoran was raised against him in Elliott. (Compare SAC, Docket No. 20-2, pp. 6-7 with Elliott, Docket No. 1, pp. 55-56.) Chavis's claims against Defendants P. Jayne and J. Litwiler concerning his property bags were raised against them in Elliott, VonHagan, and Muhammad (J. Litwiler only). (Compare SAC, Docket No. 20-1, pp. 8, 12, 13 with Elliott, Docket No. 1, p. 50 and VonHagan, Docket No. 1, pp. 12-16 and Muhammad, Docket No. 1, pp. 26-27.) And finally, Chavis's threat claims against Defendants M. Deburgomaster and J. Squires were raised against them in Muhammad. (Compare SAC, Docket No. 20-1, p. 9 with Muhammad, Docket No. 1, pp. 16-18.)

As it relates to Chavis's Elmira claims, this Court finds that they too were raised in Muhammad. This includes the claims against Defendants S. Wenderline and M. Bradt[11] (compare SAC, Docket No. 20-3, pp. 1-2; SAC, Docket No. 20-3, p. 10 with Muhammad, Docket No. 1, pp. 30-31) and the due process claim against Defendant J. Escrow (compare SAC, Docket No. 20-4, p. 5 with Muhammad, Docket No. 1, pp. 36-37).

---

[10] In addition to being barred by res judicata, Chavis's claims against Defendant Ward are also dismissed for Chavis's failure to properly identify this defendant, as Judge Roemer recommends. (See Docket No. 49, p. 10.)

[11] Chavis names Defendant M. Bradt in Muhammad but does not specifically set forth allegations against him like he does against Defendant S. Wenderline. (See Muhammad, Docket No. 1, pp. 30-31.) This appears to be an oversight by Chavis, since he details in Muhammad the same event that both Bradt and Wenderline are alleged to have been involved in here. (Compare SAC, Docket No. 20-3, pp. 1-2; SAC, Docket No. 20-3, p. 10 with Muhammad, Docket No. 1, pp. 30-31.)

Because the claims set forth above were resolved by an adjudication on the merits, involved the same defendants, and concerned the same claims, they are barred by res judicata. They must therefore be dismissed.

### b.    Claims that Fail to State a Claim

As indicated above, this Court screened Chavis's second amended complaint on March 31, 2015, pursuant to § 1915 (e)(2)(B) and § 1915A. (Docket No. 23.) At that time, this Court dismissed a number of claims and defendants, but did not specifically identify the remaining claims in the complaint. (Id.) Now upon further review, this Court has discovered that several existing claims are subject to dismissal and should have been dismissed in the previous decision under § 1915 (e)(2)(B) and § 1915A.

First, Chavis's Eighth Amendment denial-of-medical-care claims against Defendants M. Miles (SAC, Docket No. 20-1, p. 15), J. Litwiler (SAC, Docket No. 20-1, pp. 14-15), and R. Barnard (SAC, Docket No. 20-4, p. 7) related to the alleged denial of "medical supporters" or "medically-issued men's briefs" must be dismissed because this Court has found that "[Chavis's] alleged medical needs do not constitute a serious medical condition." (Docket No. 23, p. 21.) That is, Chavis "has not alleged a 'deprivation of medical treatment [that] is, in objective terms, sufficiently serious—that is, [plaintiff] must prove that his medical need was a condition of urgency, one that may produce death, degeneration or extreme pain[,] nor has he alleged that [the defendant] acted with a sufficiently culpable state of mind.'" (Docket No. 23, p. 22 (citing Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005)); see also Docket No. 23, pp. 34-35.)

Second, Chavis's retaliation claim against Defendant P. Chappius involving him

ordering cell searches as part of an alleged "ticket retaliation conspiracy" (SAC, Docket No. 20-1, pp. 2-4) must be dismissed for the same reason the claim was previously dismissed against Defendants P. Carpenter and Wetzel: the claim is wholly conclusory. (See Docket No. 23, pp. 12-14.)   Nothing Chavis alleges supports a claim that Defendant P. Chappius ordered cell searches in retaliation for Chavis filing grievances against him. (See id. at p. 13.)

Accordingly, these claims are dismissed under § 1915 (e)(2)(B) and § 1915A.

### c.    Remaining Claims

The defendants have not moved against Chavis's remaining claims under Rule 12 (b)(6), which but for the dismissal of this action as a sanction, would proceed.   Those claims include the remaining Southport claims: (1) denial-of-winter-clothing claim against Defendant P. Jayne (SAC, Docket No. 20-1, p. 8); (2) denial-of-access-to-courts claim and religious-interference claims against Defendant M. Miles (SAC, Docket No. 20-1, p. 15); and (3) denial-of-medical-care claim against Defendant R. Barnard (SAC, Docket No. 20-4, p. 7).   They also include Chavis's claims arising out of the Attica Correctional Facility, but for his claims against Defendant Fitz (SAC, Docket No. 20-3, p. 5), which are dismissed for Chavis's failure to properly identify this defendant.   (See Docket No. 49, p. 10.)

## B.    Insufficient Service of Process

The defendants also move to dismiss each of Chavis's claims on the basis that he failed to properly serve them within 120 days of filing his complaint, as required by the

version of Rule 4 (m) of the Federal Rules of Civil Procedure in effect at that time.[12]   The record reflects that the defendants are correct on this point; however, given the procedural history of this case and Chavis's eventual *in forma pauperis* status, the lack of service is excusable for good cause under Rule 4 (m) of the Federal Rules of Civil Procedure.

The time to effectuate service is tolled while an *in forma pauperis* application is pending.   See Sidney v. Wilson, 228 F.R.D. 517, 522-23 (S.D.N.Y. 2005).   And while this Court understands the defendants' argument that Chavis's *in forma pauperis* application was denied, and therefore, not technically pending, this Court, like Judge Roemer, nonetheless resolves any ambiguity or confusion concerning the status of Chavis's motion on appeal in his favor.   See Fed. R. Civ. P. 4, Advisory Committee Notes, 1993 Amendments, Subdivision (m) (providing that "[t]he district court should also take care to protect pro se plaintiffs from consequences of confusion or delay attending the resolution of an in forma pauperis petition").   Good cause therefore exists to excuse Chavis's failure to timely serve the defendants.

Once this Court granted Chavis *in forma pauperis* status on remand, the responsibility for effectuating service shifted to the court.   See 28 U.S.C. § 1915 (d); Rule 4 (c)(3) (requiring service by United States Marshal Service in cases where the plaintiff proceeds *in forma pauperis*); Wright v. Lewis, 76 F.3d 57, 59 (2d Cir. 1996) (noting that the granting of *in forma pauperis* status "shifted the responsibility for serving the complaint from [the plaintiff] to the court").   Consequently because the court remains responsible

---

12 By amendment effective December 1, 2015, the time for serving a complaint under Rule 4(m) was reduced from 120 days to 90 days.

for service, good cause would exist under Rule 4 (m) for an extension of time to complete service.  See McCalmann v. Partners in Care, No. 01-CV-5844, 2002 WL 856465, *1 (S.D.N.Y. Apr. 25, 2002) (finding that the Marshals Service's failure to properly effect service of process constitutes good cause within the meaning of Rule 4 (m)).

Consequently, this Court denies the defendants' request to dismiss Chavis's complaint for insufficient service of process.[13]

## C.    Sanctions

As an alternate basis for dismissal of the second amended complaint, the defendants argue that Chavis should be sanctioned with dismissal under Rule 11 and this Court's inherent authority for making material misrepresentations about his litigation history.   This Court agrees.

Rule 11 provides as follows:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11 (b)(3).

As noted above, Chavis is a persistent filer and well versed in the federal rules. He has filed dozens of actions throughout the state and federal courts in New York.   See,

---

13 In light of these findings, this Court specifically sets aside the recommendation that the defendants be compelled to return Acknowledgement of Receipt of Service forms to cure any defects in service, which they are not legally obligated to do.   (Docket No. 49, p. 8.)

e.g., Curlee, 2008 WL 508694, at *10 (detailing 14 of Chavis's actions); see also Docket

No. 40-4 (listing 26 of Chavis's actions).   He therefore has a wealth of litigation history.

> Generally, information about a plaintiff's litigation history is material in prisoner civil rights actions since it enables the Court to determine one or more of the following issues: (1) whether any of the issues in the action have been previously litigated and decided (for purposes of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to being granted in forma pauperis status in this action, earned "three strikes" for purposes of 28 U.S.C. § 1915(g); (3) whether the plaintiff had a record of frivolous litigation sufficient to warrant either (a) what is known as a "bar order" (i.e., an order barring him from litigating further in that court without meeting certain preconditions) pursuant to 28 U.S.C. § 1651(a), or (b) an order declaring plaintiff to be a "vexatious" litigator pursuant to 28 U.S.C. § 1927; and (4) whether the plaintiff's litigation experience was so extraordinary that it effectively dispenses with the need to afford him special solicitude.

Curlee, 2008 WL 508694, at *10.

Chavis well knows that if he chooses to complete the prisoner complaint form, he

must do so truthfully.   This is apparent because Chavis has twice before been sanctioned

with dismissal for failing to truthfully convey his litigation history in his pleadings.   In

Chavis v. Curlee, the court sanctioned Chavis with dismissal under Rule 11 because he

materially misrepresented his litigation history in his complaint.   Curlee, 2008 WL

508694, at *10-11.   Similarly, in Chavis v. Ryan, the court alternatively dismissed

Chavis's complaint as a Rule 11 sanction due to Chavis's incomplete recitation of his

litigation history.   No. 05-CV-100 (FJS/DRH), 2008 WL 4934605, at *7 (N.D.N.Y. Nov.

13, 2008).

In filing the second amended complaint here, Chavis failed to identify the other

24

lawsuits involving the same facts, claiming "too many pre-maturely [sic] dismissed I could not prepare an appeal brief due to judicial corruption here!." (SAC, Docket No. 20, pp. 2, 14.) He also wholly misrepresented his litigation history when he attested that his only lawsuit in federal court relating to his imprisonment was "'this one pending now." (Id. at p. 14.) In fact, Chavis has filed dozens of such suits. See, e.g., Curlee, 2008 WL 508694, at *10 (collecting suits); Docket No. 40-4 (same).

These misrepresentations are material since they precluded the court from making the four determinations set forth above. See Curlee, 2008 WL 508694, at *10. First and foremost, Chavis's knowing omissions and misrepresentations prevented the court from determining at an early stage whether the preclusion doctrines apply, which, as discussed above, they do. Second, the court could not determine from the face of the complaint whether Chavis was a "three-strike" litigant, which he most assuredly is. Third, Chavis's misrepresentations impaired the court's ability to explore whether Chavis has a record of frivolous litigation, which he does. And finally, this court could not properly assess whether to dispense with the special solicitude afforded pro se litigants based on extraordinary litigation experience. Chavis therefore materially misrepresented his litigation history for at least the third documented time.

As required, this Court has considered sanctions less drastic than dismissal but finds them to be inadequate in light of Chavis's pattern of abusing the litigation process and his staunch refusal to conform to the requirements of civil litigation practice. Dismissal itself has proven an ineffective sanction as Chavis has twice before had complaints dismissed for lying about his litigation history, yet he persisted in doing the

same thing here. Chavis continues to act with total disregard for the rules and the directives of the court. Such overt demonstration of bad faith and abuse of the judicial process will not be tolerated. Chavis's second amended complaint is therefore dismissed as a sanction under Rule 11 and this Court's inherent authority due to Chavis knowingly making material misrepresentations about his litigation history in the second amended complaint. [14]  See Ryan, 2008 WL 4934605, at *8 (dismissing Chavis's complaint after noting that "[t]he Court has carefully considered less drastic sanctions and have found them to be inadequate to curb this particular intentional and egregious litigation abuse—especially given [Chavis's] apparently incorrigible propensity for abusing the litigation process").

## IV. CONCLUSION

Chavis has earned the dismissal of this action. Despite numerous warnings and sanctions from several courts, Chavis continues to abuse the litigation process undeterred. His material misrepresentations here cloaked the fact that the majority of his claims are precluded by res judicata. Given Chavis's litigation history and his knowledge that misrepresentations can lead to dismissal, there can be no doubt but that his conduct here was intentional and likely designed to avoid early dismissal of his barred claims. In this Court's view, nothing short of dismissal will adequately deter such blatant

---

[14] The defendants argue that dismissal is also warranted as a sanction for Chavis's vituperative and insulting comments against the judiciary, which are littered throughout his papers and pleadings and have come to define his filings in general. (See Docket No. 40, pp. 5-6 (setting forth Chavis's conduct); see also Curlee, 2008 WL 508694, at *11 n. 14 (noting Chavis's use of abusive language, such as "calling various Defendants 'devils' and 'satanic,'" and calling defense counsel "sneaky, wicked, [and] manipulative"). Because this Court finds that Chavis's material misrepresentations alone warrant dismissal, it need not reach this argument. Similarly, in light of the dismissal, this Court need not reach the defendants' arguments that Chavis's in forma pauperis status should be revoked. (See Docket No. 40, pp. 15-17.)

disregard for the judicial process.   For that reason, in addition to a majority of the claims being precluded by res judicata, the entire second amended complaint is alternatively dismissed as a sanction.

## V.   ORDER

IT HEREBY IS ORDERED, that for the reasons stated above, this Court entered its Order entered on March 30, 2018 (Docket No. 64).

SO ORDERED.

Dated:       April 6, 2018
             Buffalo, New York


                                    /s/William M. Skretny
                                     WILLIAM M. SKRETNY
                                    United States District Judge